IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

FINANCIAL FIDUCIARIES, LLC,
a Wisconsin limited liability company, and
THOMAS BATTERMAN,                                           OPINION AND ORDER

                              Plaintiffs,                          19-cv-874-slc
          v.

GANNETT CO., INC.,

                              Defendant.

---

In this civil suit brought under the court's diversity jurisdiction, financial advisor Thomas

Batterman and his company, Financial Fiduciaries, LLC, contend that defendant Gannett Co.,

Inc. defamed them in an unfavorable news article that initially was published on August 21,

2018 in the Wausau Daily Herald and then was updated on September 19, 2018.  Before the

court are two motions:  (1) plaintiffs' motion to amend their complaint, dkt. 43; and (2)

plaintiffs' motion for summary judgment on the claims asserted in their initial complaint, dkt.

17.[1]  As explained below, I am denying both motions.

BACKGROUND

Plaintiffs filed the complaint on October 24, 2019, alleging that defendant had defamed

them in an article "initially published on August 21, 2018 in the Wausau Daily Herald" (the

"Article").  Dkt. 1.  The Article reported on a petition that had been filed in the Circuit Court

for Marathon County, in which petitioners sought Batterman's removal as trustee over a

charitable trust established by one of his clients, Joseph Giesler.  The complaint alleges that the

---

[1] Also pending is a motion by defendant to file a sur-reply to the summary judgment motion,
dkt. 41, which I will grant.

Article was false and defamatory in several respects.  In particular, plaintiffs allege that the Article did not accurately reflect the circuit court proceedings, making it seem as if they had committed embezzlement and fraud when in fact the court had not made any such findings. Although plaintiffs identified the headline and 20 statements within the body of the Article that were allegedly false and defamatory, they did not attach the August 21, 2018 version or any other version of the Article to the complaint, nor did they allege facts relating to plaintiffs' efforts to locate that or any other version of the Article.  The complaint noted that, following plaintiffs' August 30 and September 1, 2018 retraction demands, defendant updated and republished the Article, but the complaint alleged that the updated Article remained defamatory.  *Id*. at ¶ 58, 59.

On December 3, 2019, defendant moved to dismiss under Fed. R. Civ. P. 12(b)(6).  In support of the motion, defendant submitted a copy of the September 19, 2018 version of the Article and records from the Marathon County trust proceeding.  Dkts. 4, 6.  Among other things, defendant argued that plaintiffs could not show that the Article falsely implied that they had engaged in fraud or embezzled funds given the following sentence:

> Although a judge later found that Batterman had not committed fraud, theft or embezzlement, he ruled that the financial adviser had engaged in multiple acts of 'bad faith' and ordered him to be removed from handling the Geisler Trust to pay part of the charities' legal fees.

Br. in Supp., dkt. 5, at 22.

In their responsive submissions, plaintiffs objected that the September 19, 2018 version of the Article that defendant had submitted did not include certain defamatory hyperlinks that appeared in the online version of the Article.  Batterman submitted an affidavit to which he

2

attached a "true and correct copy of the Article as published on September 19, 2018," which included the hyperlinks.  Batterman Aff., dkt. 20, at ¶ 2, exh. 1.

Although Batterman asserted that he had not been able to locate a copy of the Article as originally published, *id*. at ¶ 3, plaintiffs did not object to the court considering the September 19, 2018 version of the Article for purposes of defendant's motion to dismiss.  In fact, plaintiffs filed their *own* motion for partial summary judgment based on the record before the court, asserting that there were no genuine issues of material fact that the Article as a whole and numerous statements within it were false, published to third parties, defamatory, and not privileged.[2]  Dkt. 18.

On June 1, 2020, this court issued an order dismissing the bulk of the complaint. Examining plaintiffs' allegations against the September 19, 2018 version of the Article as submitted by Batterman and the public records submitted by defendant, I found that

> it is not plausible that an ordinary reader would understand from the Article that Batterman had committed fraud, theft or embezzlement with respect to the Geisler Trust, particularly given the Article's plain statement that no such finding had been made. When read as a whole, the Article's "sting" is a substantially true account of what occurred in the *Geisler Trust* litigation.

Ord. on Mot. to Dismiss, dkt. 32, at 40-41. This court further found that the Article had not been false when it indicated that Batterman had been responsible for carrying out and protecting the Geisler Trust, or when it reported that the SEC found that Batterman had engaged in wrongdoing with respect to his handling of client assets.  *Id*.

---

[2] On February 24, 2020, I granted defendant's motion under Fed. R. Civ. P. 56(d) to continue its deadline to respond to plaintiffs' motion for summary judgment until after the court ruled on defendant's dismissal motion.  Dkt. 29.

However, this court found that plaintiffs *could* proceed on their claim that defendant had defamed them by implying that they had financially exploited elders, noting that defendant had, by way of a hyperlink, "suggested as much by directing the reader's attention to a 'RELATED' article about elder abuse." *Id*. at 41.  However, ruled the court, "[w]hether the Article's explicit and implicit statements [about elder abuse] are reasonably capable of conveying a non-defamatory meaning is an open question that Gannett may address in response to Batterman's pending motion for partial summary judgment on liability[.]" *Id*.

On June 15, 2020, defendant filed its answer, and on June 26, 2020, it filed its opposition to plaintiffs' still-pending motion for summary judgment. Dkts. 33-37.  On July 10, 2020, the date their reply was due, plaintiffs filed 57 new pages of material, including a new declaration by Thomas Batterman, attached to which were copies of the Article as originally published on August 21, 2018.  Dkt. 40.  Notably, this copy of the Article does *not* contain the "disclaimer" language stating that the judge in the *Giesler Trust* litigation had found that Batterman had not committed fraud, theft or embezzlement.

In his affidavit, Batterman avers that, in spite of his diligent efforts to do so, he had been unable to locate an original copy of the Article until June 6, 2020.  *Id*. at ¶ 2.  According to Batterman, he was out of the country when it was published and saw the article on line, but he did not save a copy before Gannett revised it.  *Id*. at ¶ 4.  Batterman avers that in late 2019 and early 2020, he scoured his computer, home, office, and newspaper archives in an attempt to track down a copy of the original Article.  *Id*. at ¶ 6.  He also spoke with various friends, acquaintances, and former clients who had mentioned seeing the Article to see if any of them had saved a copy of the original.  *Id*.  He first learned that a friend, Howard Fisher, might have

a copy after he spoke with Fisher on June 5, 2020.  After their conversation, Fisher checked his email and found a copy of an email he had sent to his wife back when the Article first appeared, and this email included a copy of the original Article.  *Id*. at 7-9.

Batterman further avers that on June 24, 2020, a former client provided him with a copy of the original Article that had been published in print on August 24, 2018 in the *Waupaca Wisconsin State Farmer*.  *Id*. at 10.  (On July 8, 2020, in response to plaintiffs' concerns about some of defendant's discovery responses and production, defendant acknowledged that the original version of the Article had been published in print in the *Waupaca Wisconsin State Farmer*, but denied that it had appeared in print in any other publications.)  Finally, says Batterman, after defendant pointed out that plaintiffs would necessarily have had a copy of the original version of the Article because they demanded that defendant retract or correct it, on July 13, 2020, Batterman contacted the Denver law firm that had represented him in connection with the retraction demand and learned that it had a copy of the original Article in its file.  *Id*. at 13. According to Batterman, it had not occurred to him before July 13 that his own lawyers in Denver might have a copy of the Article as originally published because he never sent them a copy, only links to where it appeared online.  *Id*. at 16.

Having now located a copy of the original version of the Article, plaintiffs seek permission to amend their complaint and a ruling that their summary judgment motion is moot.  Dkts. 42-43.  Plaintiffs' proposed amended complaint attaches the original version of the Article, both as it appeared online on August 21, 2018, and in print in the *Wisconsin Farmer* on August 24, 2018, and it includes a number of new statements concerning the alleged inadequacy of defendant's revisions.  As for the statements in the Article alleged to be defamatory, plaintiffs mostly repeat the allegations from their original complaint.  Acknowledging that "[t]he complaint, Gannett's

5

Rule 12(b)(6) motion and Plaintiffs' motion for partial summary judgment only considered the September 19, 2018 version of the article,"dkt. 42, at 2, plaintiffs say their recent discovery of the original Article effectively moots their summary judgment motion and is reason to allow them to amend their complaint.  In other words, plaintiffs want a do-over, using the August 21, 2018 version of the Article in addition to or instead of the September 19 version.

OPINION

## I.  Motion to Amend

Generally, a motion for leave to amend a pleading is evaluated under Fed. R. Civ. P. 15(a)(2), which provides that courts should "freely give leave when justice so requires," unless there is "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (citing *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)). In this case, plaintiffs sought leave to amend their complaint on July 15, 2020, a little over three months after the April 6, 2020, deadline set forth in this court's scheduling order for amendments to the pleadings without leave of court.  Pretrial Conf. Ord., dkt. 16, at 1.  A party seeking to amend a pleading after the expiration of the trial court's scheduling order deadline must meet the heightened "good-cause" standard of Rule 16(b)(4) before the court considers the requirements of Rule 15.  *CMFG Life Ins. Co. v. RBS Sec., Inc.*, 799 F.3d 729, 749 (7th Cir. 2015); *see also Trustmark Ins. Co. v. Gen.* & *Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005).  In making this determination, the court's "primary consideration . . . is the diligence of the party seeking amendment."  *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011).

I accept plaintiffs' assertions that both before and after filing the complaint they attempted to locate a copy of the Article as it originally was published on August 21, 2018. As they point out, they had every incentive to find a copy of the original Article and had no reason to "hide" it.

Even so, plaintiffs' conduct in pursuing this lawsuit precludes me from finding that they acted with sufficient diligence to warrant amending the scheduling order. If, as plaintiffs insist, they were aware that defendant had published an earlier, more harmful version of the Article than the one that it submitted in support of the dismissal motion, then common sense, logic, efficiency and self-preservation all screamed out to plaintiffs that the time to raise this issue was *during the dismissal proceedings*. Even without a copy of the original Article in hand, plaintiffs logically and easily could have–should have–

> (1) Moved to dismiss their suit without prejudice after defendant filed the motion to dismiss, then taken the time necessary to locate the Article;
>
> (2) Objected to the materials submitted by defendant in connection with its motion to dismiss on the ground that defendant was not using the original Article; or
>
> (3) Asked the court to stay a ruling on the motion to dismiss until plaintiffs had a chance to locate a copy of the original version, either by serving discovery on Gannett or from outside sources.

Rather than exercise any of these commonplace and clearly available options, plaintiffs chose to litigate this case as if the September 19, 2018 version of the Article was at issue, submitting their *own* copy of the September 19 Article in response to the dismissal motion.

Even worse for them now, plaintiffs doubled-down, moving for summary judgment on the ground that no reasonable fact finder could conclude that the September 19 Article was not

false and defamatory.  In other words, as a tactical matter, plaintiffs chose to go on offense despite the fact that defendant supported dismissal in part by emphasizing the "disclaimer" language that did *not* appear in the original version of the Article.  So far as it appears, it was only after the court relied on this same language in dismissing the bulk of their complaint that plaintiffs renewed their search for the original Article.

That was too late.  Under these circumstances, I find that good cause does not exist for amending the schedule so that plaintiffs now may amend their complaint.  "Seeking to amend one's complaint when it appears that the current one is a sure loser is not unusual; nor is the denial of leave to file that amended complaint."  *Hindo v. Univ. of Health Scis./The Chicago Med. Sch.*, 65 F.3d 608, 615 (7th Cir. 1995).  As Batterman acknowledges, he has known since before this case was filed that the original August 21, 2018 Article was "more harmful" than the revised article.  Batterman Aff., dkt. 44, ¶ 17.  Even so, he chose not only to file this lawsuit, but to defend the motion to dismiss without it, never mentioning until mid-July that his efforts to locate the August 21, 2018 Article were ongoing.  Meanwhile, this court read the parties' lengthy submissions, did its own legal research, then wrote a 43-page order, while defendant prepared its response to plaintiffs' motion for summary judgment.  All of this work was premised on the September 19, 2018 version of the Article, which was fine with plaintiffs at the time.  Now that they've lost, they're not fine with it anymore.

Indeed, although plaintiffs frame their motion as a request for leave to amend, what they really want is reconsideration of this court's June 1 order.  Having chosen to go forward without objection and having lost, plaintiffs are asking for a mulligan in order to avoid the impact of the court's unfavorable ruling.  A motion for reconsideration cannot be employed as a vehicle to

8

introduce new evidence that could have been adduced during the pendency of a dispositive motion. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (citations omitted). "To support a motion for reconsideration based on newly discovered evidence, the moving party must 'show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence [during the pendency of the motion].'" *Id*. at 1270 (quoting *Engelhard Indus., Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963)).

The Seventh Circuit's decision in *Caisse Nationale* is instructive here. There, plaintiff sued defendant, alleging anticipatory breach of an option contract. Over plaintiff's objection, defendant was permitted to move immediately for summary judgment without answering the complaint. Defendant assured the district court that the "only" issue before the court was "an extremely simple one": "[W]hether or not [Credit] exercised the option in a timely fashion." Hence, it said, "no discovery [would be] necessary." After deposing one of defendant's employees, plaintiff filed a cross-motion for summary judgment on all counts. The court granted plaintiff's motion and denied defendant's. *Id.*, 90 F.3d at 1268.

Armed with new counsel, defendant sought reconsideration, arguing that evidence material to the cross-motions for summary judgment had not been before the court. *Id*. Among other things, defendant contended that the option documents sent by plaintiff to defendant had mistakenly omitted an addendum. *Id*. Affirming the district court's denial of the motion for reconsideration, the court of appeals wrote:

> [W]e are not convinced that CBI could not "with reasonable diligence have discovered and produced" the allegedly missing addendum during the pendency of the motion for summary judgment. With its legal theory dependent upon collateral sources,

it was incumbent upon CBI to ensure that the district court was reviewing the proper documents. That it failed to do so is not so much evidence that CBI was caught by surprise, which CBI implies on appeal, as that it was content to do battle with the documents then before the court. In an unusual and risky maneuver, CBI declined to answer Credit's complaint and instead insisted on proceeding directly to summary judgment, alleging the case was "all based on facts presented by the plaintiff" and thus that "no discovery [would be] necessary." When that tactic failed, CBI retained new counsel who quickly discovered the alleged omission, confirming that "reasonable diligence" would have revealed it during the summary judgment phase.

*Id*. at 1270 (internal citations omitted).

The court could be writing about this lawsuit.  As in *Caisse Nationale*, plaintiffs' theory of prosecution was "dependent upon collateral sources."  Plaintiffs criticize defendant for submitting the updated version of the Article instead of the original, but "it was incumbent upon *[plaintiffs]* to ensure that the district court was reviewing the proper documents." *Id*.  (emphasis added.)  As noted above, when plaintiffs saw how defendant was drawing the battle lines, they should have called for a cease-fire until they had exhausted their search for the proper Article.  Such a search easily could have included a demand that defendant search its files, or a simple email request to plaintiffs' original attorneys in this lawsuit.  But plaintiffs not only failed to call attention to what they now view as misdirection,  they actively consented "to do battle with the documents then before the court" by filing their own motion for summary judgment.  After that approach failed abysmally, plaintiffs suddenly were able to find a copy of the original Article, thereby "confirming that 'reasonable diligence' would have revealed it" during the proceedings on the motion to dismiss.  *Caisse Nationale*. 90 F.3d at 1270.

In sum, plaintiffs have not exercised the diligence necessary  to permit them to amend their complaint or to persuade this court to  reconsider its dismissal order.  This case will proceed

10

on the original complaint as framed by *both* parties and as narrowed by the court's June 1 order, namely, whether an ordinary reader would understand the on line version of the Article, as updated on September 19, 2018, to imply that plaintiffs committed elder abuse, whether that implication is false, and whether plaintiffs sustained damages as a result.

## II. Plaintiffs' Motion for Summary Judgment

Plaintiffs' motion for summary judgment requires little discussion. As they concede in their July 14, 2020 reply, this court effectively denied the motion when it dismissed most of their complaint on June 1.[3] Reply Br., dkt. 42, at 2. As for the one remaining claim concerning the implication that plaintiffs committed elder abuse, plaintiffs note that they did not explicitly seek summary judgment on that ground. Accordingly, the court will deny the motion.

Invoking Rule 56(f)(1), defendant argues that this court should grant summary judgment in *its* favor on the remaining elder abuse implication. Rule 56(f)(1) states that "[a]fter giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant." Fed. R. Civ. P. 56(f)(1). This Rule "simply formalized what had been long-recognized as a court's ability to sua sponte, after providing notice to the parties and a reasonable time to respond, grant summary judgment . . . . It did not create a substitute for a cross-motion to summary judgment." *Nat'l Exch. Bank & Tr. v. Petro-Chem. Sys., Inc.*, 2013 WL 1858621, at *1 (E.D. Wis. May 1, 2013). In other words, Rule 56(f)(1) can be invoked by the

---

[3] In light of this concession, it is troubling that plaintiffs did not withdraw the motion after the court issued the motion to dismiss, which would have spared defendant its June 26, 2020 response, dkts. 35-37.

court, not the parties, and it requires that the court provide the parties with an opportunity to respond.

I decline to invoke Rule 56(f)(1) at this time.  Discovery has not yet closed and defendant has indicated that it plans to file its own motion for summary judgment in accordance with the court's scheduling order.  Defendant can reassert its arguments in favor of dismissal of the remaining claim at that time.

ORDER

IT IS ORDERED that:

1. Defendant's motion to file a sur-reply, dkt. 41, is GRANTED;

2.  Plaintiffs' motion to amend the complaint, dkt. 43, is DENIED; and

3.  Plaintiffs' motion for summary judgment, dkt. 17, is DENIED.

Entered this 8th day of September, 2020.

BY THE COURT:

/s/

_____

STEPHEN L. CROCKER
Magistrate Judge