UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

FINANCIAL FIDUCIARIES, LLC, a Wisconsin limited liability company, and THOMAS BATTERMAN, a Wisconsin resident,

Plaintiffs,

v.

GANNETT CO., INC., a foreign corporation,

Defendant.

Case No. 3:19-CV-0874

**DEFENDANT GANNETT CO., INC.'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiffs want to relitigate every stage of this proceeding – dating to the original *Geisler Trust* litigation itself; to Gannett's largely successful motion to dismiss; to Plaintiffs' failed motion for leave to amend. Yet there is only one lingering issue before the Court: whether Gannett is entitled to summary judgment on Plaintiffs' remaining claim that the Article's inclusion of a hyperlink that reads "RELATED: Five ways to fight elder abuse, financial exploitation" maliciously suggested that Plaintiffs were involved in elder abuse, specifically financial exploitation. The undisputed evidence contained in the *Geisler Trust* litigation record, including publicly filed pleadings not previously provided to the Court, establish that any such implication is neither false nor unprivileged nor made with the malice required by Wisconsin law. Gannett is, therefore, entitled to judgment as a matter of law.

Plaintiffs conveniently and consistently disregard the phrase "financial exploitation" contained within the hyperlink – the issue that indisputably permeated in the *Geisler Trust* litigation. Thomas Batterman was accused of concocting a plan that allowed him to improperly use Joseph Geisler's trust assets for both Batterman's and his fiancée's benefit. Records from

the *Geisler Trust* litigation leave no doubt that Batterman acted intentionally and deceptively to personally benefit financially. The Department of Justice noted that Batterman seized power that the Geisler trust did not confer and diverted money to which the trust beneficiaries were entitled. Batterman's misconduct resulted in more than $80,000 in damages. Having acted intentionally, deceptively and in bad faith, Batterman was ordered to pay the Geisler trust beneficiaries' legal fees. In short, the issues involved in the *Geisler Trust* litigation included financial exploitation of an elder and breach of his trust.

In opposing Gannett's dispositive motion, Plaintiffs confuse the applicable standard on a motion for summary judgment; misapply the law applicable to their implication claim; and put forth "evidence" neither material nor creating an issue of fact that would prevent the Court from granting Gannett's motion. Plaintiffs' defamation-by-implication claim fails for four independent reasons –

1) The *Geisler Trust* litigation record demonstrates that the alleged defamatory implication that Plaintiffs were involved in "elder abuse, financial exploitation" is not false.

2) To the extent the hyperlink within the Article could be read to imply that Plaintiffs were involved in "elder abuse, financial exploitation," that implication is privileged.

3) Even assuming that this Court had found or could find that the alleged defamatory implication about "elder abuse, financial exploitation" is both false and unprivileged, Plaintiffs have failed to establish that there are genuine issues of material fact that Gannett breached any requisite fault standard.

4) In light of the uncontroverted evidence establishing Gannett's practice of using hyperlinks embedded in stories, Plaintiffs' failure to set forth evidence that the hyperlink was "of and concerning" Plaintiffs is fatal to their claim.

Plaintiffs' untimely and inappropriate request that the Court reconsider its denial of Plaintiffs' motion for leave to amend should also be denied. Gannett respectfully requests that the Court grant its motion for summary judgment, dismissing this case with prejudice.

## ARGUMENT

### I. SUMMARY JUDGMENT IS FAVORED IN FIRST AMENDMENT CASES.

Plaintiffs' claim implicates the First Amendment. They attempt to brush that off in an effort to relitigate the issues in the *Geisler Trust* litigation. It is well-established, however, that "[s]ummary judgment may be particularly appropriate in defamation actions in order to mitigate the potential 'chilling effect' on free speech and the press that might result from lengthy and expensive litigation." *Terry v. Journal Broadcat Corp*., 2013 WI App 130, ¶ 13, 351 Wis.2d 479, 840 N.W.2d 255 (citation omitted). This does not change the basic principles of law, but it does change the focused context of the summary judgment process, heightening the Plaintiffs' burden.

In a defamation action brought by a private figure[1] against a media defendant, the plaintiff has the burden of proving that the speech at issue is false and unprivileged. *See id*. (citation omitted); *see also Torgerson v. Journal/Sentinel, Inc.*, 210 Wis.2d 524, 534, 563 N.W.2d 472 (1997). Again, this requirement avoids an effect "antithetical to the First Amendment's protection of true speech on matters of public concern." *Terry*, 351 Wis. 2d 479, ¶ 14 (citation omitted.) Plaintiffs argue that Gannett misconstrues the Court's motion to dismiss ruling in their effort to expand and obscure the one remaining issue. But it is Plaintiffs who misconstrue the applicable standard. On summary judgment, the Court confines its analysis to the "specific implication that is alleged to be false." *Mach v. Allison*, 2003 WI App 11, ¶ 15, 259 Wis. 2d 686, 656 N.W.2d 766. Here, that specific alleged implication is that the hyperlink – and only the hyperlink – implies that Batterman and Financial Fiduciaries were involved with elder abuse, financial exploitation. (*See* Compl. ¶56.1.)

---

[1] Again, Gannett reserves its right to put forth evidence and argument that Plaintiffs are limited-purpose public figures should the Court deny its motion for summary judgment.

Plaintiffs fundamentally misunderstand the difference between the motion to dismiss standard in Fed. R. Civ. P. 12(b)(6) and the standard applicable to Gannett's Rule 56 motion, arguing that the Court has already decided this motion. Not so. All the Court decided at the motion to dismiss stage was whether Plaintiffs' complaint stated a barely plausible claim for defamation-by-implication. Having survived that initial pleading hurdle only with respect to their sole claim regarding the hyperlink, Plaintiffs now retain the burden of proving – in the face of the summary judgment record – that the alleged implication at issue is false, unprivileged, "of and concerning" Plaintiffs and that Gannett breached the requisite fault standard – burdens not present at the motion to dismiss stage. On summary judgment, Plaintiffs must "put up or shut up." *See Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).

In determining whether Gannett is entitled to summary judgment, the Court will examine Gannett's submissions to determine whether they establish a prima facie defense to Plaintiffs' implication claim. *See Mach*, 259 Wis. 2d 686, ¶ 13 (citing *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986)). Here, Gannett has four independent defenses to Plaintiffs' implication claim, each supported by the record providing an independent reason to dismiss this case. The Court will determine whether Plaintiffs' submissions, in response to Gannett's materials, create a genuine issue of material fact that defeats summary judgment. For the reasons set forth below, Plaintiffs have failed to satisfy their burden and, therefore, the Court should grant Gannett's motion for summary judgment.

## II. PLAINTIFFS' REMAINING CLAIM FAILS BECAUSE THERE IS NO EVIDENCE THAT THE ALLEGED IMPLICATION IS NOT SUBSTANTIALLY TRUE.

Plaintiffs argue that Gannett's reliance on the ABA Commission on Law and Aging and the Wisconsin Department of Health Services ("DHS") is somehow inappropriate and that the Court should strike any reference to those two sources. However, courts decide, as a matter of

law, whether an alleged defamatory implication is fairly and reasonably conveyed by the words and pictures of the publication. *Mach*, 259 Wis. 2d 686, ¶ 32 (citing *Puhr v. Press Publ'g Co*., 249 Wis. 456, 460, 25 N.W.2d 62 (1946)). Gannett is not offering the ABA or DHS as an expert witness to assist the factfinder in sorting complex fact questions. Rather, Gannett's reliance on persuasive, if secondary, authority – the ABA and DHS – to assist the Court in applying the terms "elder abuse" and "financial exploitation" in the context in which they are used is neither impermissible nor extraordinary.[2] *See Commodity Futures Trading Comm'n v. Worth Bullion Grp., Inc*., 717 F.3d 545, 550 (7th Cir. 2013) (acknowledging that when construing the meaning of undefined terms in a statute, citation to a definition from internet sources was appropriate); *see also* THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION R. 16.7.7 (Columbia Law Review Ass'n et al. eds., 21st ed. 2020) (addressing issues of citing internet sources); W.D. Wis. Electronic Filing Procedures, Rule III.H ("Hyperlinks are allowed in documents filed with the court to provide access to cited material.") Indeed, Gannett's reliance on the ABA and DHS is no different than Plaintiffs' citation to the Oxford Dictionary to define the term "related." (*See* Pls.' Opp'n at 18.)

**A. The Plain and Ordinary Meaning of Words are Determinative.**

Notably, in cases concerned with defamation-by-implication in the print media, the "gist of the matter" is the "natural and reasonable import" of the words on the reader. *Mach*, 259 Wis. 2d 686, ¶ 31 (citing *Woods v. Sentinel-News Co.*, 216 Wis. 627, 629, 258 N.W. 166 (1935)). It is not necessary that the implication in question be true in every particular. All that is required is

[2] "As a question of law, there cannot appropriately be any evidentiary or factual burden with respect to the issue of materiality. A question of law is, by definition, susceptible of only two answers: 'yes,' the requirements of legal principle are met, or 'no,' they are not met. There is, in theory at least, no continuum of assurance and dubiosity as to the establishment of a proposition of law, similar to the varying degrees of certainty and uncertainty which may be ascribed to propositions of fact." *United States v. Watson*, 623 F.2d 1198, 1202 (7th Cir. 1980).

that the implication be substantially true. *Terry*, 351 Wis.2d 479, ¶ 16. Accordingly, any *statutory* definition of "elder abuse" or "financial exploitation" is not at issue. Rather, for purposes of determining whether Plaintiffs have met their burden of establishing falsity, it is only the natural and reasonable import of the terms "elder abuse" and "financial exploitation" to the reader in the context of the Article that matter.

In assessing the natural and reasonable import of those terms, it is perfectly appropriate for the Court to consider the secondary source material that Gannett cited – materials that indicate that, in Wisconsin, financial exploitation is the second largest category of elder abuse; [3] and that financial exploitation related to trusts occurs, as in the *Geisler Trust* litigation, when a trustee changes a trust without having legal authority to do so. *See* Lori A. Stiegel, ABA Comm'n on Law and Aging, LEGAL ISSUES RELATED TO ELDER ABUSE: A POCKET GUIDE FOR LAW ENFORCEMENT 45 - 47 (2014), https://bja.ojp.gov/sites/g/files/xyckuh186/files/Publications/ABA-ElderAbuseGuide.pdf (last visited on Dec. 4, 2020).

Plaintiffs offer irrelevant "evidence" that they do not physically, emotionally or sexually abuse elders, but that misses the boat. (Pls.' Opp'n at 11-12.) Plaintiffs also confuse the purpose of Gannett's reference to the "elder abuse" statute, Wis. Stat. § 940.285, in its opening brief. That reference was not made to provide a definition of elder abuse. Rather, it points out that, to the extent Plaintiffs attempt to mischaracterize their implication claim to mean that the Article improperly implied that they were engaged in criminal conduct that implication is explicitly

[3] https://www.dhs.wisconsin.gov/publications/p00124-18.pdf (See slide 5/37) For the Court's convenience, Gannett is including a Compendium with this Reply, which includes the ABA and DHS materials cited above.

negated by the Article's statement that, "[n]either Batterman nor Richards has been charged with any criminal wrongdoing in the Geisler case." (Def. PFOF. ¶ 79.)

Plaintiffs' attempts to ignore the phrase "financial exploitation" conveniently distract from the determination of whether the alleged implication from the hyperlink is false. Again, for purposes of determining whether Plaintiffs have met their burden of establishing falsity, it is the natural and reasonable import of the terms giving rise to Plaintiffs' implication that matter. Context matters and, therefore, the hyperlink must be read in its entirety – "RELATED: Five ways to fight elder abuse, financial exploitation." *See Frinzi v. Hanson*, 30 Wis. 2d 271, 276, 140 N.W.2d 259 (1966) ("In determining whether language is defamatory, the words must be reasonably interpreted and must be construed in the plain and popular sense in which they would naturally be understood in the context in which they were used and under the circumstances they were uttered.") The context is the *Geisler Trust* litigation.

**B. The Plaintiffs Cannot Demonstrate Falsity.**

Plaintiffs' claim fails because the alleged implication that Plaintiffs were involved in "elder abuse, financial exploitation" when handling the Geisler trust is substantially true. There is no evidence to suggest otherwise. Here, Plaintiffs' unobjectionable argument that the Article, taken as a whole, provides context should not be confused with Plaintiffs' failed contention that the Article, as a whole, is defamatory. *Woods*, 216 Wis. at 630 (the court must consider the publication as a whole, "not in detached fragments.") Indeed, as it relates to the Article as a whole, the Court already has ruled that –

- Gannett's statements with respect to the *Geisler Trust* proceedings were substantially true;
- The Article's statements with respect to the *Geisler Trust* proceedings are absolutely privileged under Wis. Stat. § 895.05(1);

- The Article accurately and fairly described the allegations of the ACS petition, the proceedings before the Marathon County circuit court, and the court's ultimate findings about Batterman's conduct; and

- Batterman has no actionable defamation claim with respect to Gannett's reporting on the *Geisler Trust* litigation, including its statements with respect to the allegations in the ACS petition.

(Dkt. 32 at 32-33.)

Based on the issues addressed in the *Geisler Trust* litigation, reflected by the multiple pleadings in the record, no reasonable juror could conclude that any implication drawn from the hyperlink – that Plaintiffs were involved in elder abuse, financial exploitation – is false. Plaintiffs' opposition argues that none of the evidence included with Gannett's summary judgment motion supports "Gannett's claim that Plaintiffs commit elder abuse." (Pls.' Opp'n at 7.) But that is not the issue. Rather, the issue is whether inclusion of the hyperlink in the middle of an Article about the *Geisler Trust* litigation leads to the alleged false implication that Plaintiffs "were involved in elder abuse/ financial exploitation." (Compl. ¶ 56.1.) Mr. Geisler was elderly. The *Geisler Trust* litigation established that he was exploited and, as such, abused.

Plaintiffs' opposition sets up a number of strawmen by asserting that Plaintiffs were not accused, or found guilty, of engaging in elder abuse. (Pls.' Resp. at 9-11). According to Plaintiffs, they do not physically, emotionally or sexually abuse elders. (*Id*. at 11-12.) This case is not, however, about physical, emotional or sexual abuse – it is about elder abuse through financial exploitation. Plaintiffs' attempt to confuse the nature of their implication claim by including "a kaleidoscope of shifting allegations" should be ignored. *See Schindler v. Marshfield Clinic*, No. 05-705, 2007 WL 60924, at *12 (W.D. Wis. Jan. 4, 2007).

Under the substantial truth doctrine, minor factual inaccuracies are not actionable so long as the inaccuracies do not materially alter the substance or impact of what is being

communicated. Applying the doctrine to a defamation-by-implication claim, a statement cannot be actionable if the alleged defamatory implication is substantially true – i.e. whether the "gist" or "sting" of the implication is correct. Here, Plaintiffs allege that inclusion of the hyperlink in the middle of the on-line article implies that Batterman and Financial Fiduciaries "were involved in 'elder abuse'." Compl. ¶56.1. Plaintiffs argue that the words "elder" and "exploit" do not appear in the *Geisler Trust* litigation record. (Pls.' Resp. at 9.) In the context of the record as a whole, however, that is not enough to defeat summary judgment.

Based on the *Geisler Trust* litigation record alone, it is beyond dispute that the implication that Plaintiffs were involved in elder abuse, financial exploitation is substantially true considering that –

- After Batterman was removed as trustee, the Successor Trustee noted that Batterman knew of his wrongdoing and intentionally attempted to deceive the beneficiaries in order to derive a financial benefit. (Def. PFOF ¶ 26);
- The Successor Trustee also stressed that Batterman had failed to carry out Mr. Geisler's intent as set forth in the Geisler trust. (Def. PFOF ¶ 28);
- The Department of Justice agreed, noting that Batterman had seized power the Geisler trust did not confer and by establishing and funding an unauthorized new trust, Batterman had diverted money to which the four beneficiaries were entitled. (Def. PFOF ¶ 23);
- Ultimately, the court ruled that Batterman breached his trust and abused his discretion in carrying out his duties. (Def. PFOF ¶ 31); and
- Prior to the hearing on who would pay attorneys' fees incurred in the *Geisler Trust* litigation, the Successor Trustee again emphasized that Batterman's misconduct was the driving force behind the litigation resulting in a significant depletion of the trust's assets. Specifically, the Successor Trustee noted that the Geisler Trust had incurred ***$82,354.96*** in damages that directly resulted from Vigil's and Batterman's misconduct. (Def. PFOF ¶¶ 34-35.)

"It is well-settled law that '[t]ruth is an absolute defense to a defamation claim. It is not necessary that the 'statement in question be true in every particular. All that is required is that the statement be substantially true.'" *Terry*, 351 Wis. 2d 479, ¶ 22 (citation omitted).

Accordingly, a reasonable reader of the Article, including the hyperlink, could not take the terms to convey anything other than what the story reported, statements the Court has ruled are substantially true and that are consistent with the natural and reasonable import of the terms "elder abuse, financial exploitation" –

> [T]he financial adviser Joe Geisler entrusted to administer his trust put that money in jeopardy, according to a lawsuit filed in Marathon County. The adviser, Thomas Batterman of Wausau, was accused of defrauding the charities, committing numerous breaches of trust and conspiring with his fiancée to milk the fund for trustee fees.
>
> Although a judge later found that Batterman had not committed fraud, theft or embezzlement, he ruled that the financial adviser had engaged in multiple acts of "bad faith" and ordered him to be removed from handling the Geisler trust and to pay part of the charities' legal fees.

(Def. PFOF ¶ 1, Ex. 1.) The Plaintiffs, in the face of a summary judgment motion, have not established an issue of fact on the truth of the alleged implication.

## III. PLAINTIFFS' IMPLICATION CLAIM FAILS BECAUSE THE ARTICLE'S REFERENCE TO ELDER ABUSE AND FINANCIAL EXPLOITATION IS A FAIR AND ACCURATE REPORT OF A JUDICAL PROCEEDING.

As with the substantial truth doctrine, the application of the judicial proceeding privilege is a legal question appropriate for the Court to determine on summary judgment. Plaintiffs have not established an issue of fact involving the fairness or accuracy of the reporting on the *Geisler Trust* litigation. Plaintiffs' opposition advances the identical argument made in response to Gannett's motion to dismiss: that the judicial proceeding privilege does not apply to "mere pleadings and other preliminary papers which have been filed in the clerk's office." (Pls.' Opp'n at 12) (quoting *Ilsley v. Sentinel Co*., 133 Wis. 20, 113 N.W. 425, 426-427 (1907)). But the Court already has ruled that the privilege applies to Gannett's reporting on the *Geisler Trust* litigation's pleadings that were "brought to the attention" of the court. (Dkt. 32 at 31). The

alleged implication that Plaintiffs were involved in elder abuse, financial exploitation is privileged as a true and fair report of the *Geisler Trust* litigation.

As this Court previously has held, "when determining whether an article constitutes a fair and true report, the language used therein should not be dissected and analyzed with a lexicographer's precision. The article need only be a substantially accurate rendering of the allegations of the complaint." (Dkt. 32 at 40-41) (citing *Procter & Gamble Co. v. Quality King Distributors, Inc*., 974 F. Supp. 190, 196 (E.D.N.Y. 1997) (internal quotation marks and citations omitted.) While within the legal system, the terms "elder abuse" and "financial exploitation" can, in defined circumstances, imply criminal conduct, the terms "elder abuse" and "financial exploitation" – which are linked together within the Article – denote doing something improper and using something unfairly for one's own advantage. *See, e.g*., https://www.merriam-webster.com/dictionary/abuse; https://www.merriam-webster.com/dictionary/exploit (a definition of "abuse" is "improper or excessive use or treatment," and defining "exploit" as meaning "to make use of meanly or unfairly for one's own advantage").[4]

Plaintiffs allege that the hyperlink implies that they "were involved" with elder abuse, financial exploitation. (Compl. ¶56.l). "Involved" means "having a part in something." https://www.merriam-webster.com/dictionary/involved. Read in the context of the *Geisler Trust* litigation record, it is undisputed that Batterman's alleged and adjudicated conduct (*see infra* pp. 10-11), fairly reported on in the Article, was improper: Batterman used his position to unfairly take advantage of Mr. Geisler and his trust – conduct consistent with the terms "elder abuse, financial exploitation."

4 In any event, the Article affirmatively states that, "[n]either Batterman nor Richards has been charged with any criminal wrongdoing in the Geisler case." (Def. PFOF. ¶ 79.)

Moreover, Plaintiffs' evidentiary argument that photographs and statements attributed to Joe Geisler's nephew are not privileged again obscures the one remaining issue in this case. Photographs, Gary Geisler's statements and any other aspects of the Article ***are not at issue***. For purposes of determining whether Plaintiffs' implication claim fails, the Court need only assess whether *the alleged implication* that Plaintiffs were involved in elder abuse, financial exploitation is privileged. Plaintiffs' reliance on the Court's ruling that the alleged implication is not privileged under Wis. Stat. § 895.05(1) ignores, again, the fact that the ruling was made only as part of the Court's determination that Plaintiffs' complaint sufficiently stated a claim for defamation-by-implication. (*See* Dkt. 32 at 38). Accordingly, within the context of the Article's true and accurate reporting on the *Geisler Trust* litigation, any implication that Plaintiffs "were involved" with elder abuse, financial exploitation is substantially accurate and, therefore, privileged under Wis. Stat. § 895.05(1). Indeed, their involvement is inescapable.

## IV. PLAINTIFFS' OPPOSITION FAILS TO SET FORTH A TRIABLE ISSUE OF FACT WITH RESPECT TO GANNETT'S MOTIVE AND CONDUCT WHEN INCLUDING THE HYPERLINK WITHIN THE ARTICLE.

Plaintiffs argue that the negligence standard in *Denny v. Mertz*, 106 Wis. 2d 636, 318 N.W.2d 141 (1982), controls this action. (Pls.' Opp'n at 17.) That case, however, did not involve a defamation-by-implication claim. Instead, in *Denny*, the Wisconsin Supreme Court considered the constitutional protections afforded the news media in traditional defamation actions brought by private individuals. 106 Wis. 2d at 651. While the court ruled that a negligence standard applied, it also noted that if negligence was established, liability may not follow if the court determines that public policy considerations preclude holding the negligent actor liable. *Id*. at 656. "The determination to not impose liability in instances where a negligent act has been committed and the act is a 'substantial factor' in causing the injury rests upon considerations of

public policy." 106 Wis. 2d at 657 n. 29 (quoting *Hartridge v. State Farm Mut. Auto Ins. Co*., 86 Wis. 2d 1, 11, 271 N.W.2d 598 (1978)). Such public policy considerations certainly exist where any less rigorous reading of the fault standard applicable to a defamation-by-implication claim would deter media reporting on public issues and contravene First Amendment constitutional protections.

This Court has already acknowledged the public policy considerations present in Plaintiffs' defamation-by-implication claim. "A publisher reporting on matters of general or public interest cannot be charged with the intolerable burden of guessing what inferences a jury might draw from an article and ruling out all possible false and defamatory innuendoes that could be drawn from the article." (Dkt. 32 at 35) (quoting *Woods v. Evansville Press Co*., 791 F.2d 480, 487-88 (7th Cir. 1986); *see* 1 Hon. Robert D. Sack, *Sack on Defamation*, § 2:4.5 (5th e. 2020) ("If unrestrained … the theory of libel by implication would allow a jury to draw whatever inferences it wished from statements of fact.")) "Something more" is required of plaintiffs who bring a defamation-by-implication claim based on materially true facts. *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990).

Courts address these concerns by applying a rigorous fault standard. (*See* Dkt. 32 at 35.) Since *White*, courts repeatedly have held that a plaintiff asserting defamation-by-implication must plead and prove that the defendant *subjectively intended to convey the defamatory implication*. *E.g. Nunes v. Lizza*, No. 19-4064, -- F.Supp.3d --, 2020 WL 4507326, at *7 (N.D. Iowa Aug. 5, 2020) (emphasis added), *appeal docketed*, No. 20-2710 (8th Cir. Aug. 17, 2020). The subjective intent requirement is grounded in the First Amendment. *See id.* ("[T]he First Amendment dictates the application of the subjective intent requirement.")

The subjective intent requirement is also consistent with the heightened fault standard in *Shaw v. Crandon Printing Co.*, where the Wisconsin Supreme Court held that "[e]very written or printed publication which *implies*, or may be generally understood to imply, reproach, dishonesty, scandal, or ridicule of the person is a libel [only] if false *and maliciously published*." 154 Wis. 601, 143 N.W. 698, 700 (1913) (emphasis added). That has been the law in this state now for more than 100 years. While Plaintiffs note the difference between common law malice and constitutional malice, their opposition does not dispute that *Shaw* remains the law.

Therefore, even if the Court were to find that the hyperlink is "of and concerning" Plaintiffs and that the alleged implication is both false and unprivileged – Plaintiffs' claim *still* fails as there is nothing in the record that Gannett subjectively intended to convey any *defamatory* implication when inserting the "RELATED: Five ways to fight elder abuse, financial exploitation" hyperlink. Plaintiffs' evidence fails to satisfy their burden of overcoming the significant ramifications to Gannett's First Amendment rights and the holding in *Shaw* that would be adversely affected were this case to proceed to trial. Accordingly, even if a reader could somehow draw a defamatory inference from the hyperlink, there is no evidence of Gannett's subjective intent because Gannett "merely convey[ed] materially true facts from which a defamatory inference [could] reasonably be drawn." *White*, 909 F.2d at 520.

Plaintiffs' reliance on the Court's ruling regarding the import of the term "related" is misplaced. While the Court looked to the word "related" to conclude that Plaintiffs had plausibly plead an implication claim, "something more" is always required at the summary judgment stage. Plaintiffs argue that Gannett's internal definition of "RELATED" matters not. That is incorrect. Plaintiffs must prove that Gannett subjectively intended to convey a defamatory implication and, in the absence of any other evidence, Gannett's policy related to the

use of "RELATED" hyperlinks is all that matters. At the pleading stage, the Court determined that Gannett's decision to deem an article about elder abuse 'related' to the Batterman article *could* suggest that Gannett intended or endorsed the defamatory inference. (Dkt. 32 at 38). At the summary judgment stage, however, the Court will consider evidence from Gannett about its intent. It indisputably is the general practice of the USA TODAY NETWORK -Wisconsin websites, such as the *Wausau Daily Herald's* site, to use the terminology "RELATED: [link]" to signify a link to a story that a reader might also be interested in – not necessarily a story on the same precise topic as the one they are reading. (Def. PFOF ¶ 82.) Plaintiffs' opposition does not take issue with that fact, nor could they. Nor do Plaintiffs offer *any* evidence that would place editor Mark Treinen's credibility or motive at issue.

Instead, Plaintiffs argue that it is evident on the face of the Article – for they have no other evidence to offer – that Gannett intended or endorsed the false and defamatory implication that Plaintiffs were involved in elder abuse, financial exploitation. (Pls. Opp'n at 19). That argument, of course, makes little sense considering that the Court has already ruled that the Article's reporting of the *Geisler Trust* litigation was not actionable as it was both substantially true and a privileged report of a judicial proceeding. Put simply, truthful reporting of a judicial proceeding is not *per se* evidence of a malicious defamatory intent.

Next, Plaintiffs argue that Gannett's publishing of a revised version of the Article that contained the hyperlink is somehow evidence of malice. Not so. First, Plaintiffs' argument is premised on the idea that republication of a statement after its truth has been questioned may constitute malice. Here, while Plaintiffs submitted a retraction demand after the Article was published on August 21, 2018, nothing in that demand demonstrated the falsity of the alleged implication created by inclusion of the hyperlink. Second, Gannett did not ignore Plaintiffs'

retraction demand. Instead, as Plaintiffs' opposition acknowledges, following receipt of Plaintiffs' retraction demand, Mark Treinen worked with Gannett's editing and legal staff to thoroughly consider the concerns raised by Plaintiffs. (Pls. Opp'n at 21-22). That Gannett chose to keep the hyperlink in the revised Article is only evidence that Gannett concluded that Plaintiffs' concern was unfounded and that inclusion of the hyperlink was consistent with Gannett's practice to use the terminology "RELATED: [link]" to signify a link to a story that a reader might also find of interest.

Plaintiffs' remaining arguments and proposed findings have *no bearing* on the Court's determination of whether Gannett acted intentionally, maliciously or even negligently when including the hyperlink that forms the basis of Plaintiffs' implication claim. Gannett's supervision of its intern-reporter; its decision to publish the Article before completing an interview of Batterman; motivation to profit by publishing interesting stories; and repurposing its intern's work computer in the normal course of business after he had left the newspaper -- all are immaterial to a determination of whether Gannett acted intentionally, maliciously or negligently when inserting the hyperlink into the Article. Moreover, with no expert testimony offered by Plaintiffs on the issue of the standard of care and whether Gannett breached any duty – an issue that requires expert testimony[5] – a jury would have no basis for coming to any conclusion other than that offered by Gannett's senior editors: its conduct was consistent with the USA TODAY's Principles of Ethical Conduct. *See Mach*, 259 Wis. 2d. 686, ¶ 18 (concluding that with no expert

[5] *See Restatement (Second) of Torts* § 580 cmt. *g*. (Am. Law Inst. 1977) ("[c]ustoms and practices within the [news] profession are relevant in applying the negligence standard, which is, to a substantial degree, set by the profession itself, though a custom is not controlling;" and "[e]vidence of custom within the profession of news dissemination would normally come from an expert who has been shown to be qualified on the subject.")

testimony on an issue requiring expert testimony, a jury would have no basis for coming to any conclusion other that offered by defendant.)

Accordingly, summary judgment is appropriate because Plaintiffs have failed to establish a factual dispute as to any maliciously defamatory intent when Gannett inserted the hyperlink into the Article. *See Wiley v. Ohio/Oklahoma Hearst Argyle Television, Inc.,* 33 F. App'x 434, 437 (10th Cir. 2002) (granting summary judgment for news media defendant due to plaintiff's failure to provide any evidence relating to standard of care); *Walker v. City of Oklahoma City*, 203 F.3d 837 (10th Cir. 2000) (granting summary judgment to TV station defendant as plaintiff failed to offer evidence sufficient to show reliance on public information officer's statements constituted negligence); *Kapetanovic v. Stephen J. Prods., Inc.*, No. 97 C 2224, 2002 WL 475193, at *6 (N.D. Ill. Mar. 27, 2002) (granting summary judgment in favor of production company defendant due to plaintiffs' inability to show defendant acted with any degree of fault).

## V. PLAINTIFFS' IMPLICATION CLAIM FAILS BECAUSE NEITHER THE HYPERLINK NOR THE LINKED ARTICLE IS "OF OR CONCERNING" PLAINTIFFS.

Plaintiffs' repeated misunderstanding of the law applicable to their implication claim carries over to their arguments regarding the "of and concerning" element of their claim. Again, only statements "of and concerning" Plaintiffs can support a defamation claim, *see Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d at 534, and following the Court's June 1, 2020 Order, the only statement at issue is, "RELATED: Five ways to fight elder abuse, financial exploitation." (Dkt. 32 at 33, "the statement that gives rise to this implication is the hyperlink in the web version of the Article that states: RELATED: Five ways to fight elder abuse, financial exploitation (with hyperlink).") At the summary judgment stage, the Court decides, as a matter of law, whether the statement is even "of and concerning" Plaintiffs. *See Torgerson v.*

*Journal/Sentinel, Inc.*, 210 Wis. 2d at 534. Here, neither the hyperlink nor the linked article references Plaintiffs in any way. "In determining whether language is defamatory, the words must be reasonably interpreted and must be construed in the plain and popular sense in which they would naturally be understood in the context in which they were used and under the circumstances they were uttered." *Frinzi*, 30 Wis. 2d at 276.

The hyperlink takes the reader to an article from the *Manitowoc Senior News* titled, "Manitowoc senior news: Five ways to fight elder abuse, neglect, financial exploitation" (the "Manitowoc article"). (Def. PFOF ¶ 76.) Neither Plaintiffs, Joseph Geisler, nor the *Geisler Trust* litigation are mentioned in the Manitowoc article. (Def. PFOF. ¶ 77.) In its June 1, 2020 Order construing the facts in the light most favorable to Batterman, the Court ruled that it was the inclusion of the hyperlink that made Plaintiffs' implication claim capable of surviving a motion to dismiss. (Dkt. 32 at 37). The Court noted that had Gannett not included the hyperlink, dismissal of Plaintiffs' entire case at that early stage may have been appropriate.

The standard is now different on Gannett's motion for summary judgment, and so is Plaintiffs' burden. Gannett's motion sets forth undisputed evidence that inclusion of the hyperlink was not meant to refer to Plaintiffs, let alone maliciously, but rather to signify – routinely – a link to a story that a reader might also find of interest. It has been the longstanding practice of the USA TODAY NETWORK –Wisconsin websites, such as the *Wausau Daily Herald's* site, to use the terminology "RELATED: [link]" to signify a link to a story that a reader might also be of interest – not necessarily a story on the same topic as the one they are reading. (Def. PFOF ¶ 82.) Plaintiffs do not dispute that fact, only noting that Gannett's inclusion of hyperlinks is appropriate for articles that involve similar subject matters. (Pls.' Resp. to PFOF ¶ 82.) Accordingly, as the "of and concerning" element remains essential even – or especially – in

defamation-by-implication cases, Plaintiffs' failure to set forth evidence that the hyperlink is "of and concerning" Plaintiffs is fatal to their claim.

## VI. PLAINTIFFS' REQUEST FOR RECONSIDERATION SHOULD BE DENIED.

Plaintiffs sought leave to amend their complaint on July 15, 2020, asking that they be permitted to proceed on their claim based on the August 21, 2018 version of the Article, not the later version. (Dkt. 43). The Court denied Plaintiffs' motion on September 8, 2020, ruling that "Plaintiffs' conduct in pursuing this lawsuit precludes me from finding that they acted with sufficient diligence to warrant amending the scheduling order." (Dkt. 49 at 7). As the Court noted, "[P]laintiffs chose to litigate this case as if the September 19, 2018 version of the Article was at issue." *Id*. In fact, as the Court also noted, plaintiffs "doubled-down," themselves moving for summary judgment based on the September 19, 2018 version of the Article. *Id*. Now, nearly *two months* after the Court denied Plaintiffs' motion, they seek reconsideration in the form of an argument in opposition to Gannett's summary judgment motion. Plaintiffs' request should be denied.

The disposition of a motion for reconsideration is entrusted to the district court's discretion. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citation omitted). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion[;]" *id*. – nor is an opposition to a motion for summary judgment motion. Here, Plaintiffs' arguments that they should be permitted to proceed to trial based on the August 21, 2018 version of the Article are all based on law they could have cited in their motion for leave to amend. That motion was denied, and Plaintiffs' attempt to seek reconsideration nearly two months later should be rejected.

**CONCLUSION**

For any of the foregoing reasons, Gannett requests the Court enter an order granting its Motion for Summary Judgment and dismissing Plaintiffs' entire lawsuit with prejudice.

Dated this 7th day of December, 2020.

GODFREY & KAHN, S.C.

By: *s/ Brian C. Spahn*
Brian C. Spahn
State Bar No. 1060080
Brady C. Williamson
State Bar No. 1013896
James A. Friedman
State Bar No. 1020756

Attorneys for Defendant Gannett Co., Inc.

P.O. ADDRESS:
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
Phone: 414-273-3500
Fax: 414-273-5198
bspahn@gklaw.com
bwilliam@gklaw.com
jfriedman@gklaw.com

23468197.8