# EXHIBIT 2

# EXHIBIT 2



# Legal Issues Related to Elder Abuse
## A Pocket Guide for Law Enforcement

By Lori A. Stiegel, JD

American Bar Association
Commission on Law and Aging

2014






*"My colleagues and I need to know that when we're told 'I could spend dad's money because I have his power of attorney' we shouldn't just say 'Oh, OK' and walk out."*

—Dale Gillette, Lt. (ret.), Ross County, Ohio Sheriff's Office and Triad Coordinator, Pickaway County, Ohio Sheriff's Office

## Acknowledgements and Disclaimers

This project was supported by Grant No. 2010-DJ-BX-K078 awarded by the Bureau of Justice Assistance. The Bureau of Justice Assistance is a component of the Office of Justice Programs, which also includes the Bureau of Justice Statistics, the National Institute of Justice, the Office of Juvenile Justice and Delinquency Prevention, the SMART Office, and the Office for Victims of Crime. Points of view or opinions in this document are those of the author and do not necessarily represent the official position or policies of the U.S. Department of Justice.

The views expressed herein have not been approved by the House of Delegates or the Board of Governors of the American Bar Association (ABA) except where otherwise indicated, and, accordingly, should not be construed as representing the policy of the American Bar Association.

The ABA Commission on Law and Aging receives funding through the ABA Fund for Justice and Education (FJE). The FJE is a 501(c)(3) charitable fund of the ABA that supports over 200 ABA public service and educational programs every year. All contributions to the FJE are tax deductible to the full extent allowed by law.

**1**

# How to Use this Pocket Guide

## Content Overview

This national guide provides brief explanations of:

- Legal concepts, documents, and tools that may be misused to commit elder abuse or used properly to remedy it.
- Issues and actions that justice system professionals should consider if they suspect elder abuse has occurred.

## Blue Tabs: Background Information

- Types of Elder Abuse
- Abusers and Risk Factors
- Adult Protective Services and Mandatory Reporting
- Consent, Capacity, and Undue Influence
- Considerations for Community Corrections Officers

## Multi-Colored Tabs: Legal Documents and Tools

- Deeds and Life Estates
- Guardians/Conservators
- Health Care Advance Directives
- Joint Owners/Joint Accounts
- Medicaid Planning
- Powers of Attorney
- Nursing Homes and Assisted Living
- Representative Payees and VA Fiduciaries
- Trusts
- Reverse Mortgages
- Wills

## Cross-Referenced Terms

Many of the legal concepts, documents, and tools are cross-referenced in other sections of this guide. Terms in *italics* indicate that there is a tab about that topic.

How to Use this Guide

## Resources

Additional resources can be found on the last tab of this guide.

## Portability

The guide is small enough to carry with other equipment or be attached to the visor of a patrol vehicle.

The guide can also be accessed online by computer or smartphone at www.ambar.org/ElderAbuseGuides.

## Order More Copies

For information on ordering more copies of this Guide, visit: www.ambar.org/ElderAbuseGuides.

## Further Reading: A Desk Guide

Additional information can be found in **Legal Issues Related to Elder Abuse: A Desk Guide for Law Enforcement**, which is available at www.ambar.org/ElderAbuseGuides.

The Desk Guide provides expanded information about each of the topics covered in this Pocket Guide, as well as:

- tips for communicating with older individuals,
- the differences between civil and criminal courts,
- entities that may be involved with elder abuse victims or perpetrators, and
- additional resources.

2

How to Use this Guide

3

# Types of Elder Abuse

Elder abuse is often used as a general term that includes physical, sexual, and psychological abuse; neglect; and financial exploitation. Elder abuse harms millions of older people each year. Victims may face increased risk of death, physical or emotional injury, and financial ruin. Elder abuse costs society billions of dollars annually in lost income and assets and in health care, social services, and legal system expenses.

Acts of elder abuse often violate one or more criminal laws. For information about the types and definitions of elder abuse in your state laws, visit your state's statutory database or contact your state's *adult protective services* agency (see the *Resources* tab).

The following seven pages reproduce the National Center on Elder Abuse lists of seven major types of elder abuse, their general definitions, and possible indicators of each type (www.ncea. aoa.gov/FAQ/Type_Abuse/index.aspx). The Guide's author has made a few revisions shown in [brackets] to the lists of possible indicators, and also added a list of possible crimes for each type of elder abuse. These lists are just a starting point. There are other indicators for each type of elder abuse. Also, state laws may define more or fewer types of elder abuse, use different definitions, and include other crimes that might be charged.

> Be aware that many elder abuse victims experience more than one type of abuse (**polyvictimization**).
>
> For example, perpetrators may use physical abuse or threaten *nursing home* placement to financially exploit the victim.

Types
of Elder
Abuse

## Physical Abuse

"...the use of physical force that may result in bodily injury, physical pain, or impairment."

"Physical abuse may include but is not limited to such acts of violence as striking (with or without an object), hitting, beating, pushing, shoving, shaking, slapping, kicking, pinching, and burning.

"In addition, inappropriate use of drugs and physical restraints, force-feeding, and physical punishment of any kind also are examples of physical abuse."

## Possible Indicators

"Signs and symptoms ... include but are not limited to:

- bruises, black eyes, welts, lacerations, and rope marks;
- bone fractures, broken bones, and skull fractures;
- open wounds, cuts, punctures, untreated injuries in various stages of healing;
- sprains, dislocations, and internal injuries/bleeding;
- broken eyeglasses/frames, physical signs of being subjected to punishment, and signs of being restrained;
- laboratory findings of medication overdose or under-utilization of prescribed drugs;
- an elder's report of being hit, slapped, kicked, or mistreated;
- an elder's sudden change in behavior; and
- the caregiver's refusal to allow visitors to see an elder alone."

## Possible Crimes

- Assault
- Aggravated assault
- Attempted murder
- Battery
- Domestic violence
- Elder abuse
- Kidnapping
- Manslaughter
- Murder

4

Types of Elder Abuse: *Physical*

5

## Sexual Abuse

"…non-consensual sexual contact of any kind with an elderly person. Sexual contact with any person incapable of giving consent is also considered sexual abuse. It includes, but is not limited to, unwanted touching, all types of sexual assault or battery, such as rape, sodomy, coerced nudity, and [the taking of] sexually explicit photo[s or videos]."

## Possible Indicators

"Signs and symptoms … include but are not limited to:

- bruises around the breasts or genital area;

- unexplained venereal disease or genital infections;

- unexplained vaginal or anal bleeding;

- torn, stained, or bloody underclothing; and

- an elder's report of [improper touching or of] being sexually assaulted or raped."

## Possible Crimes

- Assault
- Aggravated assault
- Battery
- Domestic violence
- Elder abuse

- Rape
- Sexual assault
- Sexual battery
- Trafficking

Types of Elder Abuse: *Sexual*

## Emotional or Psychological Abuse

"...the infliction of anguish, pain, or distress through verbal or nonverbal acts. Emotional/psychological abuse includes but is not limited to verbal assaults, insults, threats, intimidation, humiliation, and harassment. In addition, treating an older person like an infant; isolating an elderly person from his/her family, friends, or regular activities; giving an older person the 'silent treatment'; and enforced social isolation are examples of emotional/psychological abuse."

### Possible Indicators

"Signs and symptoms ... include but are not limited to:

- being emotionally upset or agitated;
- being extremely withdrawn and non-communicative or non-responsive;
- unusual behavior usually attributed to dementia (e.g., sucking, biting, rocking); and
- an elder's report of being verbally or emotionally mistreated."

### Possible Crimes

- Elder abuse
- Harassment
- Hate crimes

6

Types of Elder Abuse: *Emotional*

7

## Abandonment

"…the desertion of an elderly person by an individual who has assumed responsibility for providing care for an elder, or by a person with physical custody of an elder."

## Possible Indicators

"Signs and symptoms … include but are not limited to:

‣ the desertion of an elder at a hospital, a nursing facility, or other similar institution;

‣ the desertion of an elder at a shopping center or other public location; and

‣ an elder's own report of being abandoned."

## Possible Crimes

‣ Elder abuse

‣ Manslaughter

‣ Murder

‣ Neglect

‣ Negligent or involuntary homicide

Types of Elder Abuse: *Abandonment*

## Neglect

"...the refusal or failure to fulfill any part of a person's obligations or duties to an elder. Neglect may also include failure of a person who has fiduciary responsibilities to provide care for an elder (e.g., pay for necessary home care services) or the failure on the part of an in-home service provider to provide necessary care.

"Neglect typically means the refusal or failure to provide an elderly person with such life necessities as food, water, clothing, shelter, personal hygiene, medicine, comfort, personal safety, and other essentials included in an implied or agreed-upon responsibility to an elder."

## Possible Indicators

"Signs and symptoms ... include but are not limited to:

- dehydration, malnutrition, untreated bed sores, and poor personal hygiene;
- unattended or untreated health problems;
- hazardous or unsafe living condition/arrangements (e.g., improper wiring, [inappropriate temperatures], or no running water);
- unsanitary and unclean living conditions (e.g., dirt, fleas, lice on person, soiled bedding, fecal/urine smell, inadequate clothing); and
- an elder's report of being mistreated."

## Possible Crimes

- Elder abuse
- Manslaughter
- Murder
- Neglect

8

Types of Elder Abuse: *Neglect*

9

## Financial or Material Exploitation

"...the illegal or improper use of an elder's funds, property, or assets. Examples include, but are not limited to, cashing an elderly person's checks without authorization or permission; forging an older person's signature; misusing or stealing an older person's money or possessions; coercing or deceiving an older person into signing any document (e.g., contracts or *will*); and the improper use of *conservatorship*, *guardianship*, or *power of attorney*."

Types of Elder Abuse: *Financial*

### Possible Indicators

"Signs and symptoms ... include but are not limited to:

‣ sudden changes in bank account or banking practice, including an unexplained withdrawal of large sums of money by a person accompanying the elder;

‣ the inclusion of additional names on an elder's bank signature card;

‣ unauthorized withdrawal of the elder's funds using the elder's ATM card;

‣ abrupt changes in a *will* or other financial documents;

‣ unexplained disappearance of funds or valuable possessions;

‣ substandard care being provided or bills unpaid despite the availability of adequate financial resources;

‣ discovery of an elder's signature being forged for financial transactions or for the titles of his/her possessions;

‣ sudden appearance of previously uninvolved relatives claiming their rights to an elder's affairs and possessions;

‣ unexplained sudden transfer of assets to a family member or someone outside the family;

‣ the provision of services that are not necessary; and

‣ an elder's report of financial exploitation."

### Possible Crimes

| | | |
|---|---|---|
| ‣ Elder abuse | ‣ Forgery | ‣ Larceny |
| ‣ Embezzlement | ‣ Fraud (e.g., credit card, tax, or Medicaid) | ‣ Money laundering |
| ‣ False instrument | | ‣ Theft |
| ‣ Financial exploitation | ‣ Identity theft | ‣ Trafficking |

## Self-Neglect

"...the behavior of an elderly person that threatens his/her own health or safety. Self-neglect generally manifests itself in an older person as a refusal or failure to provide himself/herself with adequate food, water, clothing, shelter, personal hygiene, medication (when indicated), and safety precautions.

"The definition of self-neglect excludes a situation in which a mentally competent older person, who understands the consequences of his/her decisions, makes a conscious and voluntary decision to engage in acts that threaten his/her health or safety as a matter of personal choice."

### Possible Indicators

"Signs and symptoms ... include but are not limited to:

- dehydration, malnutrition, untreated or improperly attended medical conditions, and poor personal hygiene;

- hazardous or unsafe living conditions/arrangements (e.g., improper wiring, no indoor plumbing, no heat, no running water, [hoarding]);

- unsanitary or unclean living quarters (e.g., animal/insect infestation, no functioning toilet, fecal/urine smell);

- inappropriate and/or inadequate clothing, lack of the necessary medical aids (e.g., eyeglasses, hearing aids, dentures); and

- grossly inadequate housing or homelessness."

### Possible Crimes

**Self-neglect is NOT a crime.** However, it has two connections to the criminal justice system:

- Self-neglecting behaviors may be an indicator or result of some other type of elder abuse (e.g., financial exploitation may result in an older person not being able to afford food or utilities); and

- An older person who is self-neglecting may come to the attention of the criminal justice system before coming to the attention of *adult protective services* because of criminal behavior (e.g., law enforcement may be asked to investigate allegations that a self-neglecter is abusing or neglecting a child or dependent adult, is committing animal abuse or neglect, or is violating municipal codes by hoarding animals or other things).

10

Types of Elder Abuse: *Self-Neglect*

11

# Abusers

Older persons may be abused, neglected, or exploited by:

- Family members, such as spouses or partners, adult children, grandchildren or great-grandchildren, or other relatives

- Caregivers, whether paid (such as staff of home care agencies or *nursing homes*) or volunteers

- Fiduciaries, including agents under a *power of attorney*, court-appointed *guardians* or *conservators*, trustees of a *trust*, or other professionals who have an obligation to act in their clients' best interests (e.g., financial advisors, lawyers, and real estate agents)

- Friends

- Neighbors

Individual state laws may define elder abuse in ways that include other categories of abusers. For example, a state's law also may define consumer scams or crimes committed by strangers as elder abuse.



Abusers
& Risk
Factors

## Risk Factors

Risk factors are circumstances that seem related to elder abuse. Their existence does not mean that elder abuse is occurring, but their absence does not mean that it is not occurring. Be aware of these risk factors, especially if other indicators such as those listed in *Types of Elder Abuse* are observed.

- Risk factors for being a victim may include:
  - › Dementia
  - › Isolation, such as being homebound or homeless
  - › Lack of social support, such as lack of family or friends nearby
  - › Living with other people
  - › Mental illness
  - › Physical impairments
  - › Substance abuse
- Risk factors for being a perpetrator may include:
  - › Dependence of the perpetrator on the victim for financial or other forms of support
  - › History of abuse, neglect, or exploitation
  - › Living with the victim
  - › Mental illness
  - › Substance abuse

Abusers & Risk Factors

12

13

## Adult Protective Services

State or local adult protective services (APS) agencies receive and investigate reports of suspected elder abuse; visit alleged victims to determine if they need protection and have *capacity* to accept or refuse protective services; and if warranted, arrange or refer the victim to other services. Other services may include financial management, food delivery, health care, home repair or cleaning, housing (emergency or long-term), legal assistance, transportation, and victim assistance and compensation.

State law governs what *types of elder abuse* and what categories of victims an APS agency may investigate.

APS agencies refer cases to law enforcement if staff members believe that a crime has occurred. APS professionals and records may be important sources of evidence.

In your state or community, the APS agency may be called something else. For example, a few states have separate programs for adult protective services and elder protective services. For more information on finding state or local APS agencies, check the *Resources* tab.

Adult
Protective
Services &
Mandatory
Reporting

# Mandatory Reporting

## ▶ Key Definitions and Facts

- In almost every state the adult protective services (APS) law mandates that certain professionals or other individuals report suspected elder abuse to the APS agency. Failure to report is usually a crime.
- State laws vary as to who is considered to be a mandatory reporter. Some states mandate reports by law enforcement— or by anyone who suspects elder abuse—to APS.
- Other state or federal laws may require that reports be made to other agencies.
- Some APS laws require that under certain circumstances persons making reports to APS must also file a report with law enforcement or other agencies.

## ▶ Actions to Consider

- A mandatory reporter's failure to report suspected elder abuse may be a crime under state or federal law.
- Consider whether failure or delay in making a report resulted in the victim suffering further harm, other victims experiencing elder abuse, or the perpetrator not being held accountable.
- Consider whether failure or delay in making a mandatory report allowed evidence to be lost, altered, or destroyed.
- Consider whether failure or delay in making a report is evidence of a cover up or conspiracy.
- Make a report to APS if you suspect elder abuse and the case was not referred to your agency by APS.

14

Adult Protective Services & Mandatory Reporting

15

# Consent, Capacity, and Undue Influence

*Lack of consent is an element of many crimes, such as sexual assault or theft. Adults may be unable to give valid consent because they do not have decision-making capacity or because they are victims of undue influence.*

## ▶ Consent: Key Definitions and Facts

- Consent means a decision to do something or to allow something to happen.
- Consent may be given in writing, verbally, or through indicators such as nodding.
- Generally, to give legally valid consent, a person must:
  - ‣ Have decision-making capacity,
  - ‣ Have knowledge of the true nature of an act, and
  - ‣ Act freely and voluntarily.
- Lack of legally valid consent may be an element of a crime (e.g., sexual assault, theft).

## ▶ Decision-Making Capacity: Key Definitions and Facts

- Decision-making capacity (capacity) means the cognitive ability to make a decision. Sometimes laws or practitioners use the term **competence** or **competency** to mean the same thing as capacity.
- Capacity may fluctuate over time and even over the course of a day.

Consent,
Capacity,
& Undue
Influence

- There are different standards of capacity for different types of decisions. For financial decisions, a person at least must understand the nature of and the potential effect of the decision. State laws or court decisions may define what standard of capacity is required for a financial decision or action (e.g., making a contract or *will*).

- The law presumes that adults have capacity, unless a court decides differently and appoints a *guardian/conservator* to make decisions for the adult.

Consent, Capacity, & Undue Influence

### ▶ Undue Influence: Key Definitions and Facts

- Undue influence is a psychological and legal concept.

- Psychologist Margaret Singer defined undue influence as "when people use their role and power to exploit the trust, dependency, and fear of others. They use this power to deceptively gain control over the decision-making of the second person."

- Legal definitions of undue influence vary somewhat. Courts generally consider:
  - ‣ The relationship between the alleged influencer and alleged victim,
  - ‣ The alleged victim's vulnerability to undue influence,
  - ‣ The alleged influencer's opportunity to gain control, and
  - ‣ Whether the alleged victim's decisions were the outcome of the undue influence.

- A person with decision-making capacity can be unduly influenced, but it is easier to commit undue influence on someone who has diminished capacity.

16

17

- Generally, a victim of undue influence will not recognize what is happening and will side with the perpetrator.
- Undue influence invalidates consent. Even if the victim has capacity, a decision made as a result of undue influence is neither knowing nor voluntary.

▶ Relevance to Elder Abuse

- Consent, decision-making capacity, and undue influence are critical issues in many elder abuse cases.
  ‣ When these issues are raised, law enforcement and prosecutors will probably need to obtain, analyze, and use other forms of evidence besides the alleged victim's testimony.
  ‣ Capacity to make past decisions will be critical in many elder abuse cases. If the alleged victim clearly lacked capacity, his or her consent cannot be legally valid. But a person who had sufficient capacity to make a decision cannot have given valid consent if the decision was not knowing and voluntary due to undue influence, fraud, or coercion.

▶ Actions to Consider

- Consider whether the alleged victim had capacity to make the decisions in question.
- Determine whether the victim has had a capacity assessment or whether one is necessary. Skilled clinicians can retroactively assess capacity.

Consent, Capacity, & Undue Influence

- The Mini-Mental Status Exam (MMSE or mini-mental) that is widely used by *adult protective services* (*APS*) **does not** assess decision-making capacity.
  - ‣ Ideally, a capacity assessment should be conducted by a medical or mental health professional who understands how to conduct assessments, knows the pros and cons of existing assessment instruments, and has experience conducting assessments.
- Do not limit an investigation to the issue of capacity. Consider whether the alleged victim's decisions may have resulted from coercion, fraud, intimidation, misrepresentation, threats, or undue influence.
- Make a report to *APS*.

Consent, Capacity, & Undue Influence



18

**19**

# Considerations for Community Corrections Officers

## ▶ Consent, Capacity, and Undue Influence

- Consider whether it is appropriate for an offender to live or work with older persons who have diminished decision-making *capacity* or who are vulnerable to coercion, fraud, intimidation, misrepresentation, threats, or *undue influence*. Additional supervision may be warranted.

## ▶ Nursing Homes and Assisted Living Facilities

- Consider whether it is lawful or appropriate for an offender to work in a *nursing home* or residential care facility. Assess whether the offender's past crimes indicate a propensity to commit crimes against facility residents.

- If an offender is working in a facility, assess whether additional or different supervision is necessary. Conduct some supervision in the facility, and be alert to signs of possible elder abuse. A state's law or an agency's policies may require that you notify some other agency if an offender is working in a certain type of facility.

- Consider whether it is lawful or appropriate for an offender to be placed as a resident in a *nursing home* or residential care facility. Also consider whether your state law or agency policy requires that the long-term care facility's management or another agency be notified.

- Determine whether your state's law requires community corrections officers to report suspected elder abuse by an offender to *adult protective services* or some other agency.

Community Corrections Considerations

# Deeds and Life Estates

*An older person's home may be taken through financial exploitation involving deeds or life estates.*

▶ Key Definitions and Facts

- A deed is a legal document that transfers ownership of real estate to someone else. A deed may be used to add someone as a *joint owner* of the property. If there is a mortgage on the property, the deed does not affect the owner's obligation to pay the mortgage.

- There are different types of deeds. The type of deed seen most often in cases involving elder abuse is the **quitclaim** deed (often incorrectly called a quickclaim deed). Quitclaim deeds transfer some or all of an owner's interest in the property without making any legal guarantee that the interest was valid.

- A life estate is created when an owner deeds real estate to someone else but reserves the right to continue living on the property for the remainder of his or her life or until some other specified event occurs. It is possible to inherit a life estate in property from someone else. A person who inherits a life estate cannot sell or give away the property but only can use it for the remainder of his or her life.

▶ Relevance to Elder Abuse

- Deeds may be misused to commit financial exploitation in the following ways:

Deeds &
Life
Estates

20

21

‣ Someone who may benefit destroys a deed to prevent the owner from transferring property to someone else.

‣ Someone steals the identity of the property owner and forges the deed.

‣ An owner who lacks appropriate decision-making *capacity* is coerced, induced, threatened, or tricked into signing a deed.

‣ An owner with *capacity* signs a deed as a result of fraud, misrepresentation, or *undue influence*.

• A person who has a life estate in property also may be financially exploited through misuse of a deed. For example:

‣ Someone who may benefit destroys a deed to eliminate evidence that the older person has a life estate in the property.

‣ Someone steals the identity of the property owner and forges a deed giving up the life estate.

‣ An owner who lacks appropriate decision-making *capacity* is coerced, induced, threatened, or tricked into signing a deed giving up the life estate.

‣ An owner with *capacity* signs a deed giving up the life estate as a result of fraud, misrepresentation, or *undue influence*.

• Problems may come to light before or after the older person dies. There may be multiple victims:

‣ the older person whose property may have been stolen or whose estate plans may have been altered,

‣ other *joint owners*, or

‣ the person(s) to whom the owner ultimately intended to give the property.

Deeds & Life Estates

► Actions to Consider

- The circumstances surrounding the preparation, signing, or destruction of a deed may constitute a local, state, or federal crime relative to:

  ‣ Conspiracy
  ‣ Elder abuse
  ‣ False instrument
  ‣ Financial exploitation
  ‣ Forgery

  ‣ Fraud
  ‣ Identity theft
  ‣ Larceny
  ‣ Theft

- Consider whether there are other victims, such as *joint owners* whose interests were harmed.
- Consider whether the alleged perpetrator is in a position (e.g., a caregiver, *guardian/conservator*, or lawyer) to victimize other older people.
- If the older person has died, consider whether death may have been caused or hastened by someone who may benefit financially.
- Make a report to *adult protective services*.



Deeds & Life Estates

22

23

## Guardians/Conservators

*A guardian or conservator is appointed by a court to make personal and/or property decisions for a person who does not have decision-making capacity. Sometimes guardians or conservators misuse their legal authority in ways that result in financial exploitation or neglect of the incapacitated person.*

Guardians/Conserva-tors

### ▶ Key Definitions and Facts

- A court may appoint someone to make personal and/or financial decisions for a person if a judge or a jury decides the person lacks *capacity* to make decisions.

- Generally, the appointed decision-maker is called a guardian or conservator. A state may use different terms, however.

- The court issues an order or a letter listing the authority that the guardian/conservator has over the incapacitated person. The authority may be limited or full (**plenary**).

- A guardian/conservator has a legal duty to act as a **fiduciary**. This means, generally, that the guardian/conservator must act in a totally trustworthy manner and make decisions that are consistent with decisions that the incapacitated person made before losing decision-making *capacity* or that are in the incapacitated person's best interest.

## ▶ Relevance to Elder Abuse

- Someone may wrongfully take an individual to another state to get or avoid a guardianship/conservatorship.
- A guardian's/conservator's misuse of legal authority may result in financial exploitation or neglect. For example:
  - ‣ The guardian/conservator exceeds the authority given by the court (e.g., makes health care decisions when not given that authority).
  - ‣ The guardian/conservator self-deals (e.g., pays his or her own bills with the incapacitated person's money or sells the incapacitated person's house below market rate to a relative).
  - ‣ The guardian/conservator acts contrary to the incapacitated person's best interests (e.g., because of financial motives, the guardian/conservator fails to pay for adequate health care services, isolates the incapacitated person from family or friends, or fails to ask the court to end the guardianship/conservatorship when the incapacitated person regains *capacity*).

## ▶ Actions to Consider

- Consider whether a guardian's/conservator's breach of fiduciary duty violates local, state, or federal laws relative to:

| | |
|---|---|
| ‣ Elder abuse | ‣ Fraud (e.g., credit card, tax, or Medicaid) |
| ‣ Embezzlement | ‣ Larceny |
| ‣ False instrument | ‣ Money laundering |
| ‣ Financial exploitation | ‣ Neglect |
| ‣ Forgery | ‣ Theft |

24

Guardians/
Conserva-
tors

25

- Obtain and analyze the court's monitoring documents as evidence; determine whether reports have been submitted when required.

- Ask the person claiming to be a guardian/conservator to produce a court's order or letter. Investigate further if that person cannot or will not produce a court document, if the document does not name the person as the guardian/conservator, or if the document does not appear to allow the actions in question. If it is not clear whether the document names that person as guardian/conservator or allows the actions in question, contact the court or ask the prosecutor's office for an opinion.

- If allowed by law, initiate actions to freeze the incapacitated person's assets or take other steps to stop the guardian/conservator from dissipating remaining assets.

- Consider whether the guardian/conservator is in a position to do this to others.

- Consider notifying the court if a guardian/conservator is under criminal investigation.

- If the incapacitated person has died, consider whether death may have been caused or hastened by actions or inactions of the guardian/conservator.

- Make a report to *adult protective services*.

Guardians/
Conserva-
tors

## Advance Directives:
## Health Care Power of Attorney,
## Health Care Proxy, and Living Will

*Advance directives are used to provide directions about health care decisions in case a person loses the capacity to make or the ability to express those decisions. Advance directives and elder abuse sometimes intersect in ways that may involve crimes.*

### ▶ Key Definitions and Facts

- Advance directive is a general term for two documents that individuals can use to guide decisions about future health care if they lose the *capacity* to make or the ability to express those decisions themselves:
  - ‣ A **health care power of attorney**, also known as a **health care proxy**, is used by a person (the **principal**) to give someone else (the **proxy** or **agent**) legal authority to make health care decisions for the principal.
  - ‣ A **living will** instructs the proxy, some other decision-maker (such as a *guardian/conservator*), or health care providers about the type of care (including emergency treatment) that a person wants or does not want.
- A person must have appropriate decision-making *capacity* to make an advance directive.

### ▶ Relevance to Elder Abuse

- Elder abuse may occur before the advance directive is signed.
  - ‣ A person who lacks appropriate decision-making *capacity* to make an advance directive may be coerced, persuaded, threatened, or tricked into signing.

26

Health
Care
Advance
Directives

27

‣ A person with *capacity* may sign the advance directive because of *undue influence*, duress, fraud, or misrepresentation.

‣ Someone may prepare an advance directive that does not reflect the person's wishes.

‣ The signature on an advance directive may be forged.

• Providing health care treatment to a person whose advance directive indicates that such treatment is not wanted could be considered physical abuse. Failure to provide or arrange for treatment for a person whose advance directive indicates that such treatment is desired could be considered neglect.

‣ A proxy may make decisions that are contrary to the older person's wishes.

‣ A proxy may make decisions that the advance directive or state law does not authorize the proxy to make.

• A proxy may make treatment decisions that are inconsistent with the guidance provided in an advance directive (or otherwise known) and are not in the older person's best interest. Motives may include:

‣ Hastening the older person's death to receive an inheritance or end the burden of acting as a caregiver.

‣ Saving money.

‣ Preventing changes to the status quo, such as having to move out of the older person's home or losing other financial support provided by the older person.

‣ Preventing family members, *adult protective services* (*APS*), or law enforcement from having access to the older person.

‣ Covering up evidence of a crime.

Health Care Advance Directives

- Family members may disagree about who the proxy is, what health care instructions were provided, or what treatment should be given. These disputes may involve allegations of elder abuse by one family member against another.

▶ **Actions to Consider**

- The circumstances surrounding the signing of an advance directive or the proxy's activities or decisions may violate local, state, or federal laws relative to:

  - ‣ Elder abuse
  - ‣ False instrument
  - ‣ Financial exploitation
  - ‣ Forgery
  - ‣ Fraud (e.g., credit card, tax, or Medicaid)
  - ‣ Identity theft
  - ‣ Larceny
  - ‣ Manslaughter
  - ‣ Murder
  - ‣ Neglect
  - ‣ Theft

- Investigate further if a person claiming to be a proxy cannot or will not produce the advance directive, if the document does not name the person as a proxy, or if the document does not appear to allow the decisions in question. If it is not clear whether an advance directive names that person as proxy or authorizes the decisions in question, ask the prosecutor's office for an opinion.

- Consider whether it is necessary to protect the older person from physical or financial harm by taking temporary custody of the older person.

- If the older person has died, consider whether death may have been caused or hastened by actions or decisions that were contrary to the older person's wishes.

- Make a report to *APS*.

28

Health Care Advance Directives

29

## Joint Owners/Joint Accounts

*Bank or credit union accounts, investments, securities, real estate, and other forms of property can be owned by more than one person. Sometimes an older person gives away or loses joint ownership of property through financial exploitation.*

▶ **Key Definitions and Facts**

- Bank or credit union accounts, investments, securities, real estate, and other forms of property can be owned by more than one person. This is generally called joint ownership; it can take several different forms.

- The form of joint ownership governs how much of the property is owned by each joint owner, the rights of each owner to use or sell the property, and what happens to the property after an owner dies.

- Common forms of joint ownership that might be encountered in a legal document (such as a *deed* for a house or a retirement account statement) include:

  ‣ **Joint account**: an account in the name of more than one person.

  ‣ **Joint tenancy**: usually means the surviving owner is entitled to all the property.

  ‣ **Tenancy by the entireties**: usually refers to ownership by a husband and wife, with the survivor entitled to all the property.

Joint Owners/ Joint Accounts

‣ **Tenancy in common**: usually means each owner is entitled to a percentage of the property, and his or her survivors only inherit that percentage.

- The specific meaning of these terms may be established by the legal document in which they appear, or by state or federal law.

### ▶ Relevance to Elder Abuse

Financial exploitation related to joint ownership can occur if:

- A person named on a bank account only for convenience takes all or most of the money from the account.

- Someone who may benefit financially is involved in establishing a joint ownership through acts such as forgery, fraud, identity theft, misrepresentation, or *undue influence* that does not reflect the older person's true wishes.

- A person without appropriate decision-making *capacity* is coerced, induced, threatened, or tricked into establishing joint ownership that financially benefits another person.

- A joint owner with *capacity* gives up his or her interest in property to another joint owner as a result of coercion, fraud, inducements, misrepresentation, threats, trickery, or *undue influence*.

Joint Owners/ Joint Accounts

30

31

▶ **Actions to Consider**

- The circumstances surrounding establishment of joint ownership or the sale or transfer of jointly owned property may constitute a local, state, or federal crime relative to:

| | |
|---|---|
| ‣ Conspiracy | ‣ Fraud |
| ‣ Elder abuse | ‣ Identity theft |
| ‣ False instrument | ‣ Larceny |
| ‣ Financial exploitation | ‣ Theft |
| ‣ Forgery | |

- If a joint owner was legally entitled to all the money in the account or to full control of the property, prosecution may be difficult or impossible.

- If the older person has died, determine whether the death was caused or hastened by a joint owner or someone else who may benefit financially.

- Consider whether there are other victims, such as the older person's intended recipients of the jointly owned property or other joint owners whose interests were harmed.

- Consider whether the alleged perpetrator is in a position (e.g., a caregiver, *guardian/conservator*, or lawyer) to victimize other older people.

- Make a report to *adult protective services*.

Joint Owners/ Joint Accounts

# Medicaid Planning

*Medicaid planning is a term used for the process of spending down assets to become poor enough to qualify for Medicaid payment of long-term care. Medicaid planning is legal, but the circumstances surrounding the process may involve elder abuse. Also, the need for Medicaid benefits may be an indicator of financial exploitation.*

## ▶ Key Definitions and Facts

- Medicaid pays for long-term care services provided to adults who (1) are over age 65, or blind, or disabled; **and** (2) have low incomes and limited assets. Your state may use a different name for the program. For example, California refers to it as Medi-Cal, Tennessee's program is Tenncare, and some states call it Medical Assistance.

## ▶ Relevance to Elder Abuse

- Even though Medicaid planning is legal, the circumstances may involve financial exploitation by an older person's relatives who want to preserve family assets for themselves or by other individuals. Examples include:
  - ‣ A person lacking appropriate decision-making *capacity* is coerced, persuaded, threatened, or tricked into engaging in Medicaid planning.
  - ‣ A person with decision-making *capacity* participates in the process because of *undue influence*, duress, fraud, or misrepresentation.

Medicaid Planning

32

33

- A lawyer prepares Medicaid planning documents at the request of the older person's relative and never talks to the older person to ensure that he or she wants to do Medicaid planning and has appropriate decision-making *capacity*.

- The older person's signature is forged on documents used for Medicaid planning.

- A *guardian/conservator*, agent under a *power of attorney*, or trustee of a *trust* engages in Medicaid planning without having legal authority to do so, or makes decisions that do not reflect the older person's wishes or are not in the older person's best interests.

- A lawyer or other person misappropriates the older person's assets under the guise of Medicaid planning.

• Family members may disagree about whether the older person should move into a *nursing home* or whether Medicaid planning should occur. These disputes may involve allegations of elder abuse by one family member against another.

• A person applying for Medicaid who seemingly had adequate assets to pay for long-term care (at least for a while) may have been financially exploited.

• The state Medicaid agency may deny benefits to a victimized older person because the spend-down of assets violated the Medicaid rules. The older person may then apply for a "hardship exemption" by claiming that he or she should not be penalized for being a victim of financial exploitation. The Medicaid agency will likely consider whether there was an investigation by *adult protective services* (*APS*), law enforcement, or both, or prosecution of the perpetrator.

Medicaid Planning

## ▶ Actions to Consider

- The circumstances surrounding the preparation or signing of documents for Medicaid planning purposes may constitute a local, state, or federal crime relative to:

  - › Conspiracy
  - › Elder abuse
  - › False instrument
  - › Financial exploitation
  - › Forgery
  - › Identity theft
  - › Larceny
  - › Medicaid fraud
  - › Theft

- Consider whether the alleged perpetrator is in a position (e.g., a caregiver, *guardian/conservator*, or lawyer) to victimize other older people.

- Make a report to *APS*.



Medicaid Planning

34

35

## Powers of Attorney

*A power of attorney is a legal document that may be used to plan for possible incapacity because it gives someone authority to act for the person who made the document. It can be misused to financially exploit an older person.*

▶ Key Definitions and Facts

- A **power of attorney** is a legal document used by someone (the **principal**) to give someone else (the **agent** or **attorney-in-fact**) the authority to act for the principal.

- A principal must have decision-making *capacity* to sign a power of attorney.

- An agent's authority ends when the principal revokes that authority or when the principal dies.

- All states allow individuals to make a **durable** power of attorney, which stays in effect even if the principal loses decision-making *capacity*. Most states require a principal to indicate in the power of attorney that it is intended to be durable, but a growing number of states presume that a power of attorney is durable unless the document says it is not. Durability is relevant to the question of whether the agent had authority to take the actions in question. **The rest of this section uses POA/DPA to mean a power of attorney that is durable.**

- An agent has a legal duty to act as a **fiduciary**. Generally this means the agent must act in a totally trustworthy manner and make decisions that are consistent with decisions that the principal made previously or that are in the principal's best interest.

Powers of
Attorney

Powers of
Attorney

## ▶ Relevance to Elder Abuse

- An agent can misuse the POA/DPA to financially exploit the principal. Usually called POA/DPA abuse, this can occur in several ways.

  › Before the POA/DPA is signed:

  - A principal without appropriate decision-making *capacity* is persuaded, coerced, induced, threatened, or tricked into signing a POA/DPA.

  - A principal with decision-making *capacity* signs the POA/DPA because of *undue influence*, duress, fraud, or misrepresentation.

  - An agent or someone helping the agent (e.g., a lawyer) prepares a POA/DPA that does not reflect the principal's wishes.

  - A principal's signature is forged.

  › After the POA/DPA is signed:

  - An agent exceeds the authority given. For example, an agent makes gifts when not given that authority.

  - An agent engages in self-dealing. For example, an agent pays his or her own bills with the principal's money.

  - An agent's actions conflict with the principal's expectations. For example, an agent has authority to make gifts but does so in a way that undoes or undermines the principal's plan for giving away assets after death.

36

37

▶ Actions to Consider

- An agent who commits POA/DPA abuse may have violated local, state, or federal laws relative to:

  - › Elder abuse
  - › Embezzlement
  - › False instrument
  - › Financial exploitation
  - › Forgery

  - › Fraud (e.g., credit card, tax, or Medicaid)
  - › Identity theft
  - › Larceny
  - › Money laundering
  - › Theft

- Investigate further if the alleged agent cannot or will not produce the POA/DPA, if the document does not name the person as an agent, or if the document does not appear to allow the decisions in question.

- If allowed by law, initiate action to freeze the principal's assets or take other steps to stop dissipation of any remaining assets.

- If the principal has died, consider whether death may have been caused or hastened by an agent who may benefit financially.

- Consider whether there are other victims, such as the intended recipients named in the principal's *will*.

- Consider whether the agent is in a position (e.g., a caregiver or lawyer) to victimize other people.

- Make a report to *adult protective services*.

Powers of
Attorney

# Long-Term Care Facilities: Nursing Homes, Assisted Living, Board and Care Homes, and Other Residential Care Facilities

*Residents of long-term care facilities are vulnerable to abuse (including sexual abuse), neglect, and exploitation by staff, family members, visitors to the facility, or other residents. Elder abuse in a care facility may be a crime, just as it is in someone's house or apartment. The failure to report elder abuse that has occurred in a facility may also be a crime.*

## ▶ Key Definitions and Facts

- Long-term care facility is a general term that includes two categories:
  - ‣ **Nursing homes**
  - ‣ **Residential care facilities (e.g., assisted living facilities, board and care homes, personal care homes)**
- Unlicensed residential care facilities exist. There are two reasons for the lack of a license:
  - ‣ The facility does not have enough beds to trigger the local or state licensure requirement.
  - ‣ The facility is required to be licensed but is operating illegally.
- State law may require criminal background checks for employees or contractors of nursing homes or residential care facilities.

38

Nursing Homes & Assisted Living

39

### ▶ Relevance to Elder Abuse

Nursing Homes & Assisted Living

- Residents of nursing homes and other types of long-term care facilities can be highly vulnerable to physical and sexual abuse, neglect, financial exploitation, and emotional/psychological abuse by:
  - ‣ Facility management and staff
  - ‣ Visitors to the facility, including:
    - Contractors or other workers
    - Residents' own family members or guests
    - Family members or guests of other residents
  - ‣ Other residents
- Elder abuse may occur in numerous ways in a long-term care facility. Examples include:
  - ‣ Physical abuse: broken bones, bruises, burns, lacerations, or other physical injuries; hitting, kicking, punching, or shoving; and the inappropriate use of chemical or physical restraints.
  - ‣ Sexual abuse: rape, nonconsensual or unwanted touching, and improper touching during bathing or medical treatment.
  - ‣ Neglect: the failure to provide or the inadequate provision of food, medication, treatment, basic care, and supervision may result in amputations, bed sores (also called pressure sores or decubitus ulcers), dehydration, malnutrition, other medical problems, and death. Nurses or other staff may dilute or divert residents' pain medications to sell or for personal use.

› Financial exploitation: stealing a resident's belongings, benefit checks and spending money, credit cards, checks, or identity.

› Emotional/psychological abuse: belittling, humiliating, intimidating, teasing, threatening, or yelling at a resident.

• Facility management and staff may be required by federal—and possibly by state—law to report suspected or known elder abuse or acts that constitute criminal activity to law enforcement, *adult protective services* (*APS*), or some other government agency. The failure to report may be a crime and may be an indicator that evidence was tampered with or destroyed.

### ▶ Actions to Consider

• Abuse, neglect, or exploitation occurring in a long-term care facility may violate local, state, or federal laws relative to:

| | |
|---|---|
| › Elder abuse | › Larceny |
| › False instrument | › Manslaughter |
| › Financial exploitation | › Murder |
| › Forgery | › Neglect |
| › Fraud (e.g., credit card, tax, or Medicaid) | › Rape |
| › Identity theft | › Sexual assault |
| | › Theft |

• Consider whether the alleged perpetrator is in a position to victimize other residents.

Nursing Homes & Assisted Living

40

41

- A care facility's failure to conduct criminal background checks on its employees or contractors may violate state law.

- Determine whether the facility management or staff were required by either federal or state law to report suspected or known elder abuse or criminal activity and whether such reports were made.

- Make a report to the state licensure and certification agency if appropriate or required.

- If facility management or staff say they could not report suspected crime or cannot provide evidence because they must protect residents' "protected health information" under the federal Health Insurance Portability and Accountability Act (HIPAA), talk to your agency's lawyer. The HIPAA law has exceptions for law enforcement investigations and for reporting suspected elder abuse.

- Take emergency custody of the resident if it is within your agency protocols and it would not cause the person further harm. Hospitalization may be necessary. *APS*, the long-term care ombudsman program, or other agencies with responsibility for facility residents may be able to make other temporary or permanent care arrangements.

- If the resident has died, consider whether death may have been caused or hastened by actions or inactions of facility staff or others.

- Make a report to *APS* if it takes reports on and investigates elder abuse occurring in long-term care facilities.

Nursing Homes & Assisted Living

# Representative Payees, VA Fiduciaries, and Other Government Benefit Money Managers

*Federal or state agencies that provide retirement/pension or other benefits may name a person or entity to receive and spend money on behalf of a beneficiary who lacks capacity to manage that money. The person or entity may misuse the authority over the money to financially exploit the older person.*

▶ Key Definitions and Facts

- A federal or state agency can name an individual or an entity to manage money it provides to a beneficiary if the agency decides that the beneficiary lacks *capacity* to manage the money because of impairment. Agencies use different names for these money managers. For example, the Social Security Administration calls them "representative (rep) payees" and the Department of Veterans Affairs calls them "VA fiduciaries." **For simplicity, this section will refer to all types of agency-appointed money managers as rep payees**.

- Rep payees have authority to manage only the money that the agency provides to a beneficiary.

- Rep payees may be required to file periodic reports with the government agency on how they managed a beneficiary's money from that agency.

- Rep payees have a legal duty to act as a **fiduciary**. This means, generally, that payees must act in a totally trustworthy manner and make decisions in a beneficiary's best interest.

42

Representative Payees & VA Fiduciaries

43

**▶ Relevance to Elder Abuse**

- A rep payee can commit financial exploitation by misusing authority over a beneficiary's money. For example, rep payees may:

  › Fail to spend money on necessities, such as housing, food, and medical care.

  › Exceed the authority given (e.g., control other money without legal authority to do so).

  › Self-deal (e.g., buy things for the beneficiary that really only benefit the rep payee, pay his or her own bills with the beneficiary's money).

  › Fail to follow the government agency's rules about charging the beneficiary for services.

  › Mix the beneficiary's money with the payee's money.

  › Keep the beneficiary's money although no longer serving as the rep payee (e.g., after the beneficiary has been murdered or died of natural causes).

**▶ Actions to Consider**

- A rep payee's actions may violate local, state, or federal laws relative to:

  › Elder abuse
  › Embezzlement
  › False instrument
  › Financial exploitation
  › Forgery
  › Fraud (e.g., credit card, tax, or welfare)

  › Identity theft
  › Larceny
  › Making false statements
  › Neglect
  › Theft

Representative Payees & VA Fiduciaries

- Investigate further if an alleged rep payee cannot or will not produce proof of authority from the government agency, if documents do not name the person as the rep payee, or if documents do not appear to allow the actions in question. If it is not clear that the person has been named as rep payee or is authorized to take the actions in question, contact the government agency or the prosecutor's office for an opinion.

- Determine whether the rep payee has filed reports required by the agency. If so, review the reports for evidence.

- If allowed by law, initiate actions to freeze a beneficiary's assets or take other steps to stop a rep payee from dissipating remaining assets.

- Consider whether the rep payee is in a position to victimize other people.

- If the beneficiary has died, consider whether death may have been caused or hastened by the rep payee.

- Make a report to the agency providing the benefits so it can investigate and take action. For example, it may end the rep payee's authority or pursue civil or criminal penalties.

- Make a report to *adult protective services*.

Represen-
tative
Payees
& VA
Fiduciaries

44

45

## Trusts

*A trust is a legal arrangement in which a person or an institution agrees to manage an adult's assets for the benefit of that adult or someone else named by that adult. A trust can be used as a tool for financial exploitation.*

### ▶ Key Definitions and Facts

- Just as there are different types of trusts, there are different reasons for creating trusts. Some of the most common reasons include: planning for someone to manage your assets on your behalf if you lose decision-making *capacity*, avoiding the time and expense of probating a *will*, avoiding taxes, and planning for someone to manage assets for minor children or adult children with disabilities.

- An adult must have decision-making *capacity* to make, revoke, or change a trust.

- The person who creates the trust is generally known as the **grantor**, **trustor**, or **settlor**.

- People or institutions (such as banks) that manage trust assets are known as **trustees**.

- People or organizations for which assets are managed are usually referred to as **beneficiaries**.

- Depending on the type and purpose of a trust, one person may have more than one role. For example, a grantor also may be a trustee or a beneficiary.

- For a trust to be effective, ownership of the assets (**title**) must be transferred by the grantor to the trust. State laws

Trusts

govern whether the trust assets may be held in the name of the trustee or must be held in the name of the trust.

- Whether the trustee or the trust holds the trust assets, trustees have a legal duty to act as a **fiduciary**. This means, generally, that a trustee must act in a totally trustworthy manner in the interest of the beneficiary and trust, and must manage the trust's assets as instructed by trust documents.

▶ Relevance to Elder Abuse

- Financial exploitation related to trusts can occur if:
  ‣ A grantor lacking decision-making *capacity* is persuaded, coerced, threatened, or tricked into signing trust documents.
  ‣ A grantor with decision-making *capacity* signs trust documents because of *undue influence*, duress, fraud, or misrepresentation.
  ‣ Someone prepares trust documents that do not reflect the grantor's wishes.
  ‣ Someone forges the grantor's signature.
  ‣ A trustee changes or revokes a trust without having legal authority to do so or in ways that undermine the grantor's plans.
  ‣ A trustee fails to follow the grantor's instructions for managing or distributing trust assets (e.g., by exceeding the powers given by the grantor).
  ‣ A trustee uses trust assets for his or her own benefit or the benefit of others against the wishes of the grantor or the trust document.
- If a trust fails because, for example, it was made under duress, then either the grantor's *will* or state law determines

46

Trusts

47

who inherits those assets. Causing a trust to fail can undermine the grantor's plans.

- Problems may become evident before or after the grantor dies. There may be multiple victims:
  - ‣ the grantor whose assets may have been stolen or whose estate plan may have been altered, or
  - ‣ beneficiaries whose assets or inheritance may have been stolen.

### ▶ Actions to Consider

- The circumstances surrounding the preparation or signing of trust documents or distribution of trust assets may violate local, state, or federal laws relative to:

| | |
|---|---|
| ‣ Conspiracy | ‣ Forgery |
| ‣ Elder abuse | ‣ Fraud |
| ‣ False instrument | ‣ Larceny |
| ‣ Financial exploitation | ‣ Theft |

- If the grantor has died, consider whether death may have been caused or hastened by a trustee, beneficiary, or someone else who may benefit financially.

- Determine whether state law prevents someone who committed a crime against the grantor from being a beneficiary.

- Consider whether there are other victims, such as beneficiaries.

- Consider whether the trustee is in a position (e.g., a caregiver, trust officer, or lawyer) to victimize other older people.

- Make a report to *adult protective services*.

Trusts

# Reverse Mortgages

*A reverse mortgage provides income that may enable an older person to continue living in their home, but it is also a complex financial product that may be misused to financially exploit the homeowner. Loan proceeds, equity, or the home itself may be lost as a result.*

## ▶ Key Definitions and Facts

- A reverse mortgage is a special type of loan for older homeowners (aged 62+) who have substantial equity in their homes but are "cash poor." Reverse mortgages allow older homeowners to borrow against the equity in the home. The loan provides income that may allow the older person to continue living in their home.
- A reverse mortgage can provide income as a monthly payment, as a line of credit, or in a lump sum payment.
- Reverse mortgages also may be called **home equity conversion mortgages**.

## ▶ Relevance to Elder Abuse

- Financial exploitation related to reverse mortgages can occur in several ways, such as:
  - A homeowner lacking appropriate decision-making *capacity* is coerced, persuaded, threatened, or tricked into signing reverse mortgage documents.
  - A homeowner with decision-making *capacity* signs reverse mortgage documents because of *undue influence*, duress, fraud, or misrepresentation.

Reverse Mortgages

48

49

- An exploiter steals the homeowner's identity and obtains a reverse mortgage.
- An agent under a *power of attorney* misuses authority to get a reverse mortgage that the homeowner does not want.
- An agent under a *power of attorney* or someone else gets a reverse mortgage that the homeowner wants, but then steals the proceeds from the loan.
- An exploiter draws an unsuspecting homeowner into a property-flipping scheme that overcharges the homeowner and siphons the proceeds from the loan.
- An exploiter misleads the homeowner about the need to buy other financial products, such as annuities, to get a reverse mortgage.
- Exploiters inflate the appraisal to maximize the loan proceeds they intend to steal from the homeowner.
- Exploiters use unfair and deceptive practices, such as false advertising about the costs and risks of reverse mortgages.

- Problems may become evident before or after the homeowner dies. There may be multiple victims:
  - the homeowner whose property *deed*, equity, or loan proceeds may have been stolen,
  - other people living in the home who may have to move out,
  - the bank or other lender that provided the reverse mortgage, or
  - the government that insured the mortgage.

Reverse Mortgages

## ▶ Actions to Consider

- The circumstances surrounding the preparation or signing of reverse mortgage documents or distribution of loan proceeds may violate local, state, or federal laws relative to:

  - ‣ Conspiracy
  - ‣ Elder abuse
  - ‣ Embezzlement
  - ‣ False instrument
  - ‣ Financial exploitation
  - ‣ Forgery

  - ‣ Fraud (mortgage lending or bank fraud)
  - ‣ Identity theft
  - ‣ Larceny
  - ‣ Money laundering
  - ‣ Theft

- Consider whether there are other victims, such as other people living in the home.

- Consider whether the alleged perpetrator is in a position (e.g., a caregiver, *guardian/conservator*, or lawyer) to victimize other older people.

- Make a referral to the state attorney general or the U.S. attorney, bank or other business regulators, or consumer protection agencies.

- Make a report to *adult protective services*.

Reverse Mortgages

50

51

# Wills

*A will is a legal document that expresses a person's wishes for the distribution of money or property after death. Wills are not effective until the person has died and the will has been probated. Financial exploitation related to wills can occur in a variety of ways.*

▶ Key Definitions and Facts

- A will is a legal document used by someone (the **testator**) to indicate who should receive the testator's money or property (the **estate**) after he or she dies.

- A testator must have **testamentary capacity** to make, change, or revoke a will. This is a lower standard than decision-making *capacity*.

- A testator who has testamentary *capacity* can change a will at any time before death. This is done by making a new will or by adding a **codicil**, which is a new section that changes an existing will.

- Wills do not become effective until the testator has died and the estate has been probated. **Probate** is the process in which a court decides if a will is valid, gives creditors the opportunity to make claims, and orders distribution of the estate. People who expect to inherit under a will cannot take a testator's assets in anticipation of that inheritance.

- The person responsible for probating the will and distributing the estate as ordered by the court is generally known as the **executor**.

Wills

- The people or organizations that inherit the estate are generally known as **heirs**.
- Executors have a legal duty to act as a **fiduciary**. This means, generally, that the executor must act in a totally trustworthy manner and distribute the estate as ordered by the court.

Wills

## ▶ Relevance to Elder Abuse

- A will can be used as a tool for financial exploitation. Problems may come to light before or after the testator dies. Examples of exploitation related to a will include:

  ‣ Someone takes money or property before the testator dies and justifies it by saying "I was going to inherit it anyway."

  ‣ A person lacking testamentary *capacity* is coerced, persuaded, threatened, or tricked into signing a will.

  ‣ A person with testamentary *capacity* signs a will because of *undue influence*, duress, fraud, or misrepresentation.

  ‣ Someone prepares a will that does not reflect the testator's wishes.

  ‣ The testator's signature is forged.

  ‣ A *guardian/conservator*, agent under a *power of attorney*, or other fiduciary changes or revokes a will without having legal authority to do so or in ways that undermine the testator's estate plan.

  ‣ An executor fails to follow the court's order for distributing the estate.

52

**53**

▶ Actions to Consider

- The circumstances surrounding the preparation or signing of a will or the distribution of the estate may constitute a local, state, or federal crime relative to:

  ‣ Conspiracy          ‣ Fraud
  ‣ Elder abuse         ‣ Identity theft
  ‣ False instrument    ‣ Larceny
  ‣ Financial exploitation  ‣ Theft
  ‣ Forgery

- If the testator has died, consider whether death may have been caused or hastened by an heir, a disinherited person, or someone else who may benefit financially.

- Consider whether there were other victims, such as the testator's intended heirs.

- Determine whether state law prevents someone who committed a crime against the testator from inheriting.

- Consider whether the alleged perpetrator is in a position (e.g., a caregiver, *guardian/conservator*, or lawyer) to victimize other older people.

- Make a report to *adult protective services*.

Wills

# Resources

**Websites of Federal Agencies**

- **U.S. Department of Justice websites**

  › **Elder Justice**
    **www.justice.gov/elderjustice**

  › Bureau of Justice Assistance
    www.bja.gov

  › Civil Division
    www.justice.gov/civil

  › Office of Community Oriented Policing Services
    www.cops.usdoj.gov

  › Office for Victims of Crime
    www.ojp.gov/ovc

  › National Institute of Justice
    www.nij.gov

  › Office on Violence Against Women
    www.justice.gov/ovw

- **National Center on Elder Abuse**
  A national resource center funded by the
  U.S. Department of Health and Human Services
  Administration on Aging
  www.ncea.aoa.gov

Resources

54

55

## Websites of National Organizations

- American Bar Association Commission on Law and Aging
  www.americanbar.org/aging
- International Association of Chiefs of Police
  www.theiacp.org
- National Adult Protective Services Association
  www.napsa-now.org
- National Association of Triads
  www.nationaltriad.org
- National Center for State Courts Center for Elders
  and the Courts
  www.eldersandcourts.org
- National Clearinghouse on Abuse in Later Life
  www.ncall.us
- National Committee for the Prevention of Elder Abuse
  www.preventelderabuse.org
- National Consumer Voice for Quality Long-Term Care
  www.theconsumervoice.org
- National District Attorneys Association
  www.ndaa.org

Resources

## Legal Issues Related to Elder Abuse

Information about **ordering more copies** of this Pocket Guide and about the more detailed **Desk Guide** can be found online at: www.ambar.org/ElderAbuseGuides.

### Pocket Guide

**Legal Issues Related to Elder Abuse: A Pocket Guide for Law Enforcement** provides brief explanations of:

- legal concepts, documents, and tools that may be misused to commit elder abuse or used properly to remedy it, and

- issues and actions that justice system professionals should consider if they suspect elder abuse has occurred.

### Desk Guide

**Legal Issues Related to Elder Abuse: A Desk Guide for Law Enforcement** is also available. It provides more information about each of the topics covered in this Pocket Guide, as well as:

- tips for communicating with older individuals,

- the differences between civil and criminal courts,

- entities that may be involved with elder abuse victims or perpetrators, and

- additional resources.




ABA Product Code 4280101  •  ISBN 978-1-62722-935-7