IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

FINANCIAL FIDUCIARIES, LLC,
a Wisconsin limited liability company, and
THOMAS BATTERMAN,

          Plaintiffs,

   v.

GANNETT CO., INC.,

          Defendant.

OPINION AND ORDER

19-cv-874-slc

---

Thomas Batterman and his company, Financial Fiduciaries, LLC, are suing defendant Gannett Co., Inc. for defamation on the basis of an unfavorable news article that initially was published on August 21, 2018 in the *Wausau Daily Herald*, then was updated on September 19, 2018. In an opinion and order issued June 1, 2020, this court dismissed the bulk of plaintiffs' complaint. Dkt. 32. Gannett now seeks summary judgment on the one claim that survived: that the Article published by defendant defamed plaintiffs by implying that they financially exploit elders. Dkt. 55. As explained below, I am granting that motion on the ground that this implication is substantially true.

FACTS

The Article underlying this suit was first published by defendant on August 21, 2018, in the *Wausau Daily Herald* under the headline "*Wisconsin financial advisor accused of violating a dead man's trust, mishandling $3 million*".[1] The Article reported on a probate matter in the Circuit

---

[1] The Article was written by Sam Wisneski, a journalism student from UW-Milwaukee who interned at the *Herald* that summer. Wisneski's work was reviewed by Mark Treinen, Gannett's News Director for publications in Central/East Wisconsin, and Robert Mentzer, a storytelling coach for Gannett.

Court for Marathon County, Wisconsin that had been initiated nearly three years earlier by the American Cancer Society (ACS). ACS claimed that Batterman, in his capacity as trustee for the Geisler Trust, had violated his statutory duties by mismanaging trust funds (the "*Geisler Trust* litigation"). The Article also reported on two administrative orders filed by the Securities and Exchange Commission in 1997 and 2018 in which the SEC fined Batterman and his related companies for violating certain rules governing financial advisers. (I discussed both the *Geisler Trust* litigation and the Article in the court's June 1, 2020 order, dkt. 32, and I incorporate that discussion herein by reference.)

On August 30, 2018, Batterman, by counsel, sent Gannett a demand for retraction or correction, identifying the headline and 19 other statements or features of the Article as either false or misleading. Gannett determined that no retraction was warranted, but on September 19, 2018, it published an updated online version of the Article that clarified the Marathon County Circuit Court's ruling on the allegations against Batterman. A copy of the updated Article remains online.

Batterman contends that the Article as a whole was defamatory because it reported on allegations in the *Geisler Trust* litigation that were either "discredited" or "abandoned" by the time the Article was published. This created the false impression that Batterman had engaged in fraud or embezzled funds, when in fact both the successor trustee and the court in the *Geisler Trust* litigation had explicitly found no fraud, theft or embezzlement. Batterman further contends that the Article was defamatory because: (1) its tactical use of hyperlinks embedded within the Article falsely implied that Batterman had committed embezzlement and elder abuse; (2) it inaccurately identified Batterman or an entity controlled by him as the trustee overseeing

2

the administration of the Geisler Trust; and (3) the SEC did not find Batterman "guilty" of any wrongdoing, as reported in the Article.

On June 1, 2020, this court issued an order dismissing the bulk of the complaint. Examining plaintiffs' allegations against the September 19, 2018 version of the Article[2] as submitted by Batterman and the public records submitted by defendant, I found that:

> It is not plausible that an ordinary reader would understand from the Article that Batterman had committed fraud, theft or embezzlement with respect to the Geisler Trust, particularly given the Article's plain statement that no such finding had been made. When read as a whole, the Article's "sting" is a substantially true account of what occurred in the *Geisler Trust* litigation.

Ord. on Mot. to Dismiss, dkt. 32, at 40-41.

I further found that:

> Contrary to Batterman's contention, the court did *not* reject *all* of ACS's allegations concerning Vigil Trust/Batterman's administration of the Geisler Trust. As reported in the Article, the court found that Vigil, through Batterman, *had* breached its duties as a trustee when it failed to notify the beneficiaries within a reasonable time frame, failed to provide complete and timely information, and made unilateral decisions that arguably favored Vigil about how the gift was to be distributed to the beneficiaries. Further, the court found that those breaches "amounted to something of bad faith, fraud or deliberate dishonesty." As Gannett accurately reported, although Judge Moran found that Batterman had not committed fraud, theft or embezzlement, "he ruled that the financial adviser had engaged in multiple acts of 'bad faith' and ordered him to be removed from handling the Geisler trust and to pay part of the charities' legal fees."

---

[2] About a month later, Batterman sought reconsideration (in the form of a motion to amend the complaint) on the ground that he had recently located a copy of the original Article as published on August 21, 2018. I denied that motion on September 8, 2020. Dkt. 49. In his opposition to the instant summary judgment motion, Batterman asks the court to reconsider that order and allow him to proceed on the August 21, 2018 version of the Article. That request is denied. Batterman's new arguments do not convince me that I erred in denying his request the first time.

3

> In light of these rulings, Batterman cannot plausibly show that the Article was false insofar as it implied that Vigil/Batterman had "mishandled" or "committed wrongdoing" with respect to the trust funds . . . when these terms are considered in the context in which they were used, they plainly were not meant to indicate fraud, but rather that Batterman had failed to properly execute his duties with respect to the trust funds.

*Id*. at 29-30.

This court further found that the Article had not been false when it indicated that Batterman had been responsible for carrying out and protecting the Geisler Trust, or when it reported that the SEC found that Batterman had engaged in wrongdoing with respect to his handling of client assets. *Id*.

However, I reached a different conclusion with respect to Batterman's claim that Gannett defamed him by falsely implying, by virtue of a captioned hyperlink stating: "**RELATED**: Five ways to fight elder abuse, financial exploitation," that he had committed "elder abuse" by financially exploiting elders. Gannett had paid little attention to this allegation in its briefing, arguing only that the hyperlink caption and related article were not defamatory because they were not statements about Batterman or his companies. After surveying the law and commentary concerning defamation-by-implication, I allowed the claim to survive dismissal, stating:

> Batterman's complaint plausibly states a claim for defamation by implication even under the more demanding standard required in actual malice cases. Construing the facts in the light most favorable to Batterman, the Article as a whole is capable of conveying the defamatory inference that Batterman financially exploits elders. The Article's reporting on the *Geisler Trust* and SEC proceedings depicted Batterman as an unscrupulous financial adviser who mishandles his clients' money, and the quotations from Geisler's nephews alluded to elder abuse when they indicated

>that Batterman, their uncle's former financial adviser, "took advantage" of the elder Joe Geisler.
>
>Perhaps if Gannett had stopped there and allowed its readers to draw their own conclusions from these statements, dismissal would be appropriate.  But Gannett did something more: it told its readers in capitalized, bold letters that another article about "elder abuse" was "related" to the story about Batterman.  By doing so, Gannett did not merely present a set of facts that permitted readers to infer that Batterman exploited elderly clients; instead, it drew the inference for them.  Gannett's decision to deem an article about elder abuse "related" to the Batterman article "supplies additional, affirmative evidence suggesting that the defendant intends or endorses the defamatory inference," *White [v. v. Fraternal Order of Police,* 909 F.2d 512 (D.C. Cir. 1990)*],* 909 F.2d at 520.  This suffices to state a claim for defamation by implication.  Moreover, to the extent Gannett implied that Batterman committed elder abuse, that statement is not privileged under Wis. Stat. § 895.05(1), insofar as it is not a "true and fair" report of a judicial or other governmental proceeding.

*Id*. at 36-38.

Finally, in a footnote, I explained that

>At the dismissal stage, for the purposes of this particular claim, I am generously accepting Batterman's allegation that this implication is false, even though he has not specifically alleged in the complaint that he does *not* exploit elders for financial gain. Further, the public records do not conclusively refute this allegation. Judge Moran did not find that Batterman exploited Geisler, he found that Batterman breached his duties as trustee for Geisler's Trust.  At this juncture, these types of misconduct are different enough to preclude me from finding from the exhibits to the complaint that the "elder abuse" implication is true.

*Id*. at 34, n.5.

5

OPINION

Defendant now moves for summary judgment, asserting that plaintiffs' remaining claim must be dismissed because, insofar as the Article implies that plaintiffs engaged in a form of elder abuse by financially exploiting elders, this implication is substantially true. *See Lathan v. Journal Co.,* 30 Wis. 2d 146, 158, 140 N.W.2d 417, 423 (1966) (to defeat a defamation action, article or statement in question need not "be true in every particular" but must only be "substantially true"). Although not framed in these terms, defendant essentially asks this court to reconsider footnote 5, quoted above, wherein this court said that the records and court rulings from the *Geisler Trust* proceedings did not establish the truth of the elder abuse implication because the case involved Batterman's abuse of Geisler's trust, not Geisler himself.

Pointing out that slight inaccuracies of expression are immaterial so long as the "gist" or "sting" of the implication is correct, defendant argues that "issues of elder abuse and financial exploitation were an indispensable and unavoidable part of the [*Geisler Trust*] case": Joe Geisler was elderly when he died, and Batterman, the person entrusted to dispense his fortune in accordance with his wishes, abused that trust. *A fortiori*, argues defendant, this court's conclusion that the Article fairly and accurately reported on the *Geisler Trust* litigation dispenses simultaneously with the alleged falsity of the elder abuse implication. Br. in Supp., dkt. 56, at 15-16.

Plaintiffs respond that this court should deny the motion because it is just a rehash of its 12(b)(6) argument. As plaintiffs correctly note, defendant relies mostly on the same record from the *Giesler Trust* proceeding that it submitted in support of its 12(b)(6) motion and upon

which this court relied in dismissing most of plaintiffs' complaint.[3]  Although plaintiffs acknowledge that the court applies different standards at dismissal than on summary judgment, they argue that the court already considered the question of the truth of the elder abuse implication in light of the *Geisler Trust* documents and determined that those documents did *not* establish that plaintiffs engaged in elder abuse in the form of financial exploitation.  Moreover, argue plaintiffs, that conclusion was correct: the words "elder" or "exploit" do not appear anywhere in any of the records or transcripts from the *Geisler Trust* litigation.  In fact, they note that even Mentzer, who helped Wisneski write the story, did not think the Article was about elder abuse; in his view, the Article was about "financial management following a person's death," whereas "elder abuse is abuse of a person who is living."  Br. in Opp., dkt. 60, at 9 (quoting Mentzer Dep. Tr., dkt. 54 at 48:18-49:4).

Having considered the parties' competing arguments, I am granting summary judgment to Gannett.  With the benefit of additional briefing on the question of falsity in light of the *Giesler Trust* documents and the rulings from the Marathon County Circuit Court, I agree with Gannett:  these documents establish as a matter of law that plaintiffs cannot meet their burden of proving that the implication they were involved in "elder abuse, financial exploitation" is false.  That plaintiffs engaged in financial exploitation is irrefutable.  As Judge Moran found, Batterman abused his discretion and breached his duties as trustee of Joe Geisler's trust by, among other things, setting up a scholarship fund not authorized by the trust language itself; that he did these

---

[3] Defendant bolsters its argument with publications from the American Bar Association and the Wisconsin Department of Health and Human Services and with quotations from Geisler's nephews that appeared in the Article, all of which plaintiffs say is inadmissible.  Admissible or not, I have not considered this evidence because it is not material to the question before the court.

things in bad faith; and that his actions resulted in damages to the trust, including excess fees earned by Batterman as a result of his unilateral creation of the scholarship fund.

As Gannett now argues, the fact that plaintiffs exploited Geisler's money as opposed to Geisler himself is not a sufficiently material distinction to render false the implication that plaintiffs engaged in "elder abuse, financial exploitation." Notably, in reaching the opposite conclusion at the 12(b)(6) stage, I not only gave the benefit of every doubt to plaintiffs, I also failed to recognize that "[m]inor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (internal citations and quotations omitted). The gist of the Article's accurate reporting on the *Geisler Trust* litigation is that Batterman had abused the trust that the elder Joe Geisler had placed in him to see that his wishes were carried out after his death. Thus, the hyperlink implying that plaintiffs financially exploited elders was substantially true. Therefore, because plaintiffs cannot meet their burden of showing that the allegedly defamatory implication raised by the hyperlink caption is false, their defamation claim must be dismissed.

ORDER

IT IS ORDERED that defendant Gannett Co, Inc.'s motion for summary judgment is GRANTED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 8th day of February, 2021.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge